1840.

Le Breton
v.
Miles.

---

LE BRETON, executrix, and others *vs.* MILES and others.

Where two natives of France entered into an ante-nuptial contract in New-York, relative to their future interests in property which they had at the time of the marriage, or which they should acquire during the coverture, which contract was made in referen c to the laws of France and to an intended residence in that country, and was by its terms to be afterwards drawn up in the due form of a marriage contract according to the French laws, but the parties after their marriage continued to reside in this state ; *Held*, that the rights of the parties under such contract must be governed by the laws of France which were in force at the time of the consummation of the marriage.

1840.

Le Breton
v.
Miles.

Where parties marry with reference to the laws of a particular state or country, as their intended domicil, those laws govern in the construction of a marriage contract entered into between them, so far at least as their rights of personal property are concerned. But the remedy to secure such property and to protect the rights of the parties to the contract, must be according to the law of the country in the courts of which such remedy is sought.

Under the French laws of community, a marriage contract by which the parties stipulate that the property which they then have, or which shall come to them by inheritance during the marriage, or independent of the marriage, shall be out of the community, and be their own property : [*et nous seront propres;*] does not give to the wife the seperate use of her property which is excluded from the community; but the husband is entitled to the control of the same during the marriage, and the income or use of such property belongs to the community for the support of the family.

But a marriage with an agreement for a *separation* of goods entitles the wife to administer and manage her property, and to receive the income thereof for her own use and benefit in the same manner as if she was a feme sole ; except that she cannot alien her real estate without the consent of her husband or the sanction of the proper tribunal.

Where by the contract of marriage, the property of the wife is excluded from the community, but without any agreement for a separation of goods, if the husband neglects to provide for her, or her property is endangered by the insolvency of the husband, or otherwise, so as to entitle her to a decree of separation of goods by the laws of France and in the tribunals of that country, the court of chancery in this state will interfere for the protection of her interest in such property.

April 7.        THIS case came before the court upon the petition of Sophia, the wife of Abel Robert, one of' the defendants, claiming her share of the estate of her father, which was in controversy in this suit, as her separate estate free from the control of her husband, under an ante-nuptial agreement between them. The petitioner and her husband were both natives of France, but intermarried at the city of N. York, in November, 1823 ; having previous to the marriage executed a written contract in the French language relative to their future interests in the property which each then had or which should be acquired, or come to one or both of them during the marriage, in substance as follows :

" We the undersigned, Sophia Le Breton, widow of Francis Huguet, of the one part, and Abel Robert, of the other part, living in the same house, No. 74 Chambers-

street, New-York, considering the relations of love and friendship which exist between us, which relations are grounded upon the mutual esteem we have for each other, after having sworn before God to take each other for husband and wife before the end of the year 1823, and in consequence of this sworn faith which promises us such happy days, desiring as far as in our power to give to each other reciprocal proofs of this love even after this short life, and considering moreover the promise we made to each other to leave the United States within the next year, and to go and reside in France, and desiring accordingly to lay the basis of a marriage contract which shall be drawn up in writing in the accustomed form, before a public officer here or in France, in order to give our agreements as hereinafter specified their full effect, and all the binding force which we intend to give them by this private instrument, we have concluded and agreed upon the following:

*Article* 1*st.* The law of community is the rule under which we understand ourselves as marrying.

*Article* 2*d.* All the property, as well moveable as immoveable, and monies, of whatever description, which belonged to us respectively previous to the signing of this present agreement, are to be out of the community. An inventory of them is to be made from the titles which shall be produced, and their value specified in the marriage contract; until which time their value is to be ascertained by the inventory to be annexed to this present writing.

*Article* 3*d.* All property, moveable or immoveable, or monies of whatever description, which shall come to us by inheritance during the marriage, or independent of the marriage, are equally out of the community, and are our own property, [*seront egalement hors la communante, et nous seront propres.*]

*Article* 4*th.* All the debts contracted before the marriage are to be paid by the one who contracted the same, out of his or her own monies.

*Article* 5*th.* I, Sophia Le Breton, widow of Francis Huguet, desiring to give to my future husband, Abel Rob-

ert, an unequivocal proof of the love I entertain for him, I make known and declare that I give to him during his life, whether there shall be children born of our marriage or not, an annuity of three hundred dollars, lawful money of the United States : which annuity is to be charged upon the interest of my capital invested, or upon the income of my immoveable property, at his election.

*Article 6th.* I, Abel Robert, although I have not at present any disposable property, I declare nevertheless that I give to my future wife, the widow of Francis Huguet, whether there shall be children born of our marriage or not, an annuity of three hundred dollars, to be charged upon my property, or upon the interest of my capital which I may leave after my death. I declare besides, that I will give to her son, Victor Huguet, all necessary care during his infancy, and will attend to his education and take care of his interests with all the zeal and activity of which I am capable.

*Article 7th.* The above written articles of agreement are irrevocable ; and we swear to observe them as religiously as if they had passed before a public officer. Done in good faith, and under our respective signatures. New-York, September 1st, 1823."

The question which arose between the parties relative to the construction of these marriage articles, the parties having continued to reside in this state, and the contract never having been drawn up in due form according to the French law as contemplated by them when this ante-nuptial agreement was made, was whether the wife was entitled to the whole control and income of her property, which was excluded from the community, during her coverture ; or whether the husband was entitled to the administration of the property during the marriage, and to the interest or income thereof for the support of the family. The counsel for both parties assented that the court should be at liberty to refer to the French civil code, and other legal works, for the purpose of ascertaining the French law in reference to which the contract was made. It also appeared by the pa-

pers in the case, that the husband was without property of his own, but that he and his wife lived together, and that he contributed as much as he was able to the support of the family.

*W. C. Noyes*, for the petitioner.

*C. F. Grim*, for A. Robert, the husband.

THE CHANCELLOR. I have very little doubt that both the petitioner and her husband are acting in good faith in this case ; both intending to carry the ante-nuptial contract into full effect, but each believing that his or her construction thereof is correct, according to the French law, in reference to which law the contract was undoubtedly made. I have, therefore, bestowed much labor upon the examination of the case, for the purpose of arriving at a correct conclusion; and to save the parties the expense of sending a commission to France to examine witnesses there as to the French law which is applicable to this contract.

So far as the rights of the parties are concerned, independent of the mere security of the property and the proper remedies in our courts to protect those rights, I have no doubt that this ante-nuptial agreement must be governed by the law of France, although it was entered into at New-York, where the marriage also took place. It appears to be a well settled principle of law, in relation to contracts regulating the rights of property consequent upon a marriage, so far at least as personal property is concerned, that if the parties marry with reference to the laws of a particular place or country, as their future domicil, the law of that place or country is to govern, as the place where the contract is to be carried into full effect. And this must certainly be the correct rule where the marriage contract in terms refers to the intended domicil of the parties as the place or country by whose laws their rights under the marriage contract, in reference to property, are to be determined. Here the parties are not only natives of

France, but they state in their ante-nuptial contract, as one of the reasons for making the same, that they have agreed to leave the United States and go to France to reside; and they then make a contract in terms which clearly indicate their intention to be governed by the French law, as it then was, not only as to the property which they respectively possessed at the time of the marriage, but also as to future acquisitions. By the first article of their agreement they declare that they intend to marry under the law or legal rule of community. The contract must, therefore, be construed in reference to that rule as it existed in the law of France in 1823, when the marriage took place. By a reference to the French civil code, it will be seen that community in France is either legal or conventional ; and that in default of special stipulations which derogate from the law of community, or modify it, the legal community and the various rules established in respect to it form the common law of France. (*Civil Code, art.* 1393.) These rules are embraced in the articles of the civil code from 1400 to 1496 inclusive ; and apply to the contract under consideration, except so far as the legal community has been modified by the stipulations of the parties. One of those rules is, that the husband alone administers the property of the community. (*Art.* 1421.) And another is, that the husband has the management of all the personal goods of the wife ; (*Art.* 1428) which term personal there includes immoveables, or real estate, as well as moveables. He is also responsible for all waste which such property may sustain by the neglect of conservatory acts for its preservation. The code expressly declares that conventional community remains subject to the rules of legal community, in all cases where those rules have not been superseded, explicitly or impliedly, by the contract. (*Art.* 1528.) The code also, in terms, authorizes the parties, in their marriage contract, to stipulate that they will be separate in goods ; the effect of which agreement is to give to the wife the entire management and control of her property, both real and personal, and the enjoyment of the in-

1840.

Le Breton
v.
Miles.

come thereof, in the same manner as if she was a feme sole. But she cannot make any agreement which will authorize her to alienate her immoveable property, during the marriage, without the concurrence of the husband ; or, in case of his refusal, by the authority of the appropriate tribunal. (*Art.* 1536, 1538.) The 223d article of the code provides that every general authority, although stipulated by the contract of marriage, is invalid, except as respects the administration of the property of the wife. But it would seem, from the last clause of the 1538th article, that this restriction was not intended to apply to the alienation of the moveables of the wife, under the clause of separation of goods. Whether a general authority to that effect, however, should not be contained in the marriage settlement, in order to take the case out of the operation of the 217th article, is a question which it is not necessary here to determine. For I have satisfied myself, from a careful examination of the ante-nuptial contract, in this case, with the various provisions of the French civil code, that it is not an agreement that the parties should be separate in goods ; so as to give to the wife even the administration of her property which is excluded from the community.

There appears to be a well settled distinction, preserved in the French law, between a mere exclusion of the proper or personal goods of the wife from the community, and a stipulation that the parties shall be separated in their goods. The first case is provided for in the six articles of the civil code which precede the provisions relative to the rights of parties who marry under a stipulation that they shall be separate in goods. Article 1530 declares that marrying without community does not confer upon the wife a right to administer her property, nor to enjoy the fruits thereof; but that such fruits are deemed to have been given to the husband to sustain the expenses of the marriage. And the next article also declares that, in respect to such property, the husband retains the administration of the moveables and immoveables of the wife, and of consequence the right to the enjoyment of all the moveable property which she

1840.

Le Breton
v.
Miles.

brings as dowry or which falls to her during the marriage ; subject to the restitution thereof, which he is bound to make upon the dissolution of the marriage, or upon a decree of separation of goods pronounced by the appropriate tribunal. (*See also Duranton Cours De Droit Francaise, Lib.* 3, *Tit.* 5, *No.* 310.) Masse, in his perfect notary, in treating of the incapacities of married women in a state of community, refers to these two articles of the civil code, in connection with the 1428th, for the purpose of showing that the incapacity of the wife is the same as to the administration of her goods which are excluded from the community, as it is in respect to those which belong to the community. And he adds, " The income or fruits of the goods *propres* of the wife *commune* fall into the community of which the husband is master, and the income of the sole goods [*biens personnels*] of the wife *non commune* belong to the husband, to support the expenses of the marriage state ; and it is for these reasons that the one as well as the other is deprived of the administration of her goods." (*Masse's Parfait Notarie, vol.* 1, *p.* 128.) Again, he says : " Wives, on the contrary, who are married not with a simple exclusion of community, but with separation of goods, have the entire administration of their moveables and immoveables, and the free enjoyment of their incomes." (*See also* 3 *Bellot's Cont. of Marriage,* 359, § 2. *Biret's Cont. of Marriage,* 161. 1 *Burge's Col. & For. Law,* 407.) This distinction, between a simple exclusion of the goods which belong personally to the wife, from the community, and a clause in the marriage contract declaring that the husband and wife shall be separated in their goods, was also fully recognized in the discussions which took place in the legislative body upon the adoption of this part of the civil code of France. In the speech of M. Simeon, in the session of that body of the 10th of February, 1803, he says : " As people when they marry, place themselves under the law of community by the mere act of marriage, and yet can depart from the legal community by restraining or enlarging it by such stipulations as they wish, they

can also exclude that community which is of common right but which nevertheless is not absolutely required. The exclusion of the community alone does not establish the rule of dower; which rule must be expressly assumed. Neither does it give to the wife the administration of her property : for the rights of the husband to that administration are independent of the community. She cannot, therefore, alienate her immoveables without his consent, or by the authorization of the proper tribunal of justice. He will receive all the moveables which she brings into her marriage portion, or which accrue to her during the marriage ; subject to the restitution thereof for which he is liable upon the dissolution of the marriage. And as he enjoys the property, he must pay or satisfy all the charges thereon which are payable by those who have the use of such property. The parties have not only the power to exclude the community, but to marry with a clause or stipulation for a separation of goods. That clause has a greater effect than the exclusion of the community ; it leaves to the wife the entire administration of her goods, and the free enjoyment of her income. In such case, the husband has merely the power which results from the marriage only ; which always prevents the wife from alienating without his authorization, or, upon his refusal, without that of the court. (*See the Baron Locre's Legislation of France, Vol.* 13, *p.* 468. *See also* 4 *Guyot's Rep. de Jurisp. art. Communaute, p.* 210 ; 16 *Idem, art. Separation De Biens* ; *Poth. Traite de la Communaute, pt.* 1, *ch.* 3, *art.* 8, § 3, 4 ; 2 *Battur's Community of Goods, pt.* 2, *ch.* 11, § 2, *p.* 189; 2 *Toullier's Civ. Law of France, p.* 20.)

The counsel for the petitioner supposes that the language of the contract between these parties, which not only declares that the goods of each shall be out of the community but shall be their own, is equivalent to a clause of separation of goods. In this, however, he is clearly wrong. The word *propre*, as used in this clause of the contract, was probably only intended by the parties to declare a little more explicitly that the goods acquired by either by suc-

cession during the marriage, or in any other way entirely independent of the rights which the marriage gave to them jointly, should equally with the property possessed before marriage be excluded from the community; so as to be the personal goods of each. Thus, Masse says, (*vol.* 1, *p.* 173,) " the goods of the wife, who is *commune*, that is, who marries under the law of community, as in this case, are either *propres* or *conquets*. The goods *propres* are those which belong to her personally, and of which the fruits and revenues only enter into the community; the *conquets* are all those of which the principal or capital, as well as the fruits and income which they produce, enter the community. The fruits and income of the *propres*, as well of the husband as of the wife, are also called *conquets*; because they form a portion of the goods of the community." *Res propria est quæ communis non est.* (*See* 14 *Guyot's Repert. art. Propre;* 3 *John. Ch. Rep.* 212; 1 *Burge's Col. & Foreign Law*, 347.) The conclusion therefore at which I have arrived, in this case, is, that the husband did not intend by this contract to relinquish his marital rights over the property of the wife, which was excluded from the community; and that he is clearly entitled to the interest or income of the fund in court, for the support of himself and his wife and family, so long as it is properly applied for that purpose. And the marriage contract must be carried into effect, as far as it can be done consistently with our laws, so as to give her the full benefit of the principal of the fund at the dissolution of the community; subject to the annuity which is secured to him out of the same in case he survives his wife.

The French law has not left the wife entirely destitute of support from the income of her own property, even where she has not secured to herself the administration and the enjoyment of the income by a clause of separation of goods in the marriage contract. For she may apply to the proper tribunal for a decree of separation of goods, so as to give her the administration and income of her *biens propres*; not only for the support of herself and family,

but also for the protection of the fund, where her dowry is in peril. Or where the situation of the husband's affairs gives room to fear that his property will not be sufficient to satisfy the prior claim and demands of the wife. (*Civ. Code, art.* 1443.) Such a suit cannot, indeed, be maintained in our courts, as the laws of this state do not permit a feme covert to hold separate property free from the control of her husband, except through the medium of a trustee. But this court, in the exercise of its equitable powers, may afford her such relief as the nature of the case requires for the protection of her property, where the husband is himself the trustee for her, as in this case, under this ante-nuptial agreement.

There is nothing in the fact that the husband has lost a part of the property of his wife by an investment thereof in the Dry Dock Bank, to show that he is incompetent to manage the property with ordinary prudence and discretion. It was such a loss as the most judicious men are constantly exposed to, who invest their funds in the stocks of moneyed corporations; and to which the property of his wife was equally exposed while it remained invested in the stocks of insurance companies. If the property of the husband was such, therefore, as to afford a reasonable assurance to the wife that the loss would be made good to her in case of his death, this misfortune in losing that portion of her dowry, would be no sufficient reason for withholding from him the full possession of the fund, which belongs to her in this suit as a part of her father's estate. It is evident, however, from his own statement, that he has very little property of his own, and that he has not the means of making good this loss; for which he is liable according to the French law. Under such circumstances, it would be a departure from the ordinary course of this court to permit the fund, which is now within its power, to go into his hands without security. If the parties, therefore, cannot agree upon a mode of investing the same which will be more for the interest of both, it must be invested by the receiver on bond and mortgage, or in public stocks,

in the name of the assistant register.   And the interest or income thereof must be paid over to the husband, for the support of himself and his family, until the further order of this court; with liberty to the wife to apply for further directions if the income is not properly applied for that purpose.   I trust, however, that after this decision upon the respective rights of the husband and wife under this marriage settlement, in the construction of which instrument there was certainly room for an honest difference of opinion among those who were not much acquainted with the laws of France, to which their ante-nuptial contract related, they will be able with the advice and assistance of friends to make an amicable arrangement as to the investment of this fund; and for the application of the income thereof for their joint benefit during the existence of the community, so as to save the expense of any farther application to the court on the subject.

The wife has such a separate interest in the subject of this suit as entitles her to appear and protect her rights therein by a separate solicitor and counsel, if she thinks proper. But even in reference to that, as the husband and wife have a common interest in recovering the full share of the wife in her paternal inheritance, I would suggest to both the expediency of employing the same counsel to protect their rights, in any future litigation which may be necessary; so that the property in which they are both interested may not be subjected to any unnecessary and useless expense.