By the Court—Hoffman, J.
I. I shall first examine the case in regard to the defendant' Herman Thorn. The counsel has presented points upon his position under the contract, and as to the judgment'against him, separate from the case of his wife; and some distinct questions necessarily arise.
1. The execution of the instrument is sufficiently proven.
I am satisfied by the evidence, that everything necessary to authenticate it, by the law of France, was observed. Even if it is not the rule that-proof of the execution of an instrument suf *287 ficient at- the place of execution, is sufficient where it is to be enforced, yet we have the Notary deposing that he saw the parties sign the document; that his own name is written at the beginning of the contract, (the mode of attestation in use in France,) and that he signed if in his capacity of Notary Public. (See Brown v. Thornton, 1 Nev. & Perry, 343; 6 Adol. & Ellis, 185; Alivon v. Furnival, 1 Crom., Mees. & Rosc., 277; in the matter of Marianne Clericetti, 30 Eng. L. and Eq, R., 532; Regina v. Newman, 18 id., 113.) It is proven that the original cannot be removed from the proper office except by an order of a French tribunal, and that transcripts attested as in the present case are admitted in evidence throughout the- Empire.
2. I regard the question to be wholly immaterial, whether the translation of the last clause of article 6 of the contract is such as the plaintiffs, or such as the defendants claim it to be. Whether it stipulated for a mortgage to be recorded in New York, (and hence to be duly acknowledged or proven,) or merely for the registration in the proper office in France, as seems alluded to by the witness Descours, is of no importance. Herman Thorn, in the clearest language “charged, bound and mortgaged ” the property in question.
In the view of a Court of Equity this was an effectual mortgage against him, and against all volunteers under him, and upon the settled doctrine of such a Court, the party would be compelled to execute any instrument, and do any act, necessary or proper, to give effect at law to-what was thus effective in equity. (Varick v. Edwards, 1 Hoff. R., 391, and cases.)
Ellis v. Nimmo, (1 Ll. & Goo. t. Sug., 333,) deserves particular attention. There was an agreement in writing signed by the father, after the marriage of his daughter, to secure her £50 per annum out of the rents of a farm, and to execute the necessary deed to that effect when called on. Lord Chancellor Sugden compelled a specific performance. He said, “ The Court requires a sufficient consideration, and I find a provision for a wife or child is held a meritorious consideration proper to call into action the power of a Court of Equity in aid of a defective execution or surrender. Now, in my opinion, it makes no difference whether that power is required to aid a defective surrender, or to enforce an agreement resting in fieri. I have a contract before me which *288 I ain bound'to enforce, if there is a sufficient consideration. The consideration is such as would enable the Court to remedy even a defective settlement, where there is no contract. I think it sufficient a fortiori to sustain an actual contract.”
Again he says, “ Upon a covenant "to stand seised, for the benefit of a wife or . child, equity held such a consideration sufficient to bind the estate. That-was a use before the statute, .that use the statute executed and turned into a possession; still it rested upon the original equity. A covenant to stand seised was merely an agreement founded on a good or meritorious consideration, and the statute executed'that agreement.”
Had the effectual charge or mortgage in this case been a covenant to charge or mortgage, the relief, sought would- have been necessarily granted. . It would be strange if the case was weak-: ened by the. absolute nature of the act and. force of the language employed.
3. The next,question ! shall examine, of those raised by the counsel of the defendant H.- Thorn, - relates to the effect-of the statute of limitations. .
The contract-was dated the 4th of June, 1842, and the marriage took place two days afterwards. I consider that the contract did not go into effect so as to give any right of action under it until the marriage brought its consideration into force.
The defendants continued to reside -in Paris until sometime in 1845. On' the 29th of September of that year they .arrived in New York, in which place they have since continued to reside. The present action was commenced on the 29th of October, 1855. The plaintiffs have resided since their marriage in France.
The disability of the plaintiff, Madame De Pierre, existed when .the marriage contract went into effect, and. now continues. The statute never began to run against her. The question as to ■ the husband is of more uncertainty.
The counsel of the defendants refer to cases of which Milward v. Thanet, (5 Ves., 720, n. b.,) is an example. “They were cases of bills for specific performance, in which a peculiar rule prevails, that the party seeking an execution of a contract must show himself ready, prompt and eager.
Since the Revised Statutes of 1830, covering every imaginable 'casé of relief in a Court of Equity, and fixing a-statutory limita *289 tion in each, I have supposed that the doctrine of a Court of Chancery as to lapse of time, and the analogy to the old statutes of limitation, was at an end. The Legislature had substituted a definite and comprehensive rule.
The Code has left this case to be governed by the provisions of the Revised Statutes. The right of action accrued before it went into effect. (§ 78.)
■ It was a case of exclusive jurisdiction of a Court of Equity before the Code, and the 52d section of the statute would apply to it. (2 R. S., 301.) I pass over the question whether the 51st section could bear upon the case, on the ground of a discovery of the alleged fraud by incumbering the premises with the mortgage of $70,000. .This remark' may, however, be made, that the pleadings contain nothing relating to this incumbrance. It seems to have been discovered during the proceedings. We do not know its date, nor when it was discovered by the plaintiffs. This would be important, and should be proven or admitted. (Boggs v. Rathbone, 4th June, 1849, before Duer, Campbell and Mason, S. C., General Term, 10th December, 1858, Superior Court.) I do not perceive how this matter can now be considered, in any bearing, upon the point of the statute of limitations.
But even on the supposition that the husband is barred and the wife is not, this action can, in my opinion, be sustained. It is true that “ when once the statute runs against one of two parties entitled to a joint action, it operates as a bar to such joint action.” (Story, J., in Marsteller v. McLean, 7 Cranch, 156.) That case decided that a plea of the statute of limitations where only fome of joint tenants plaintiffs were under disability, was good. So in Perry v. Jackson, (4 T. R., 516,) a plea of the statute good as to one partner, availed as to both in a joint action. Roe v. Rowlston, (2 Taun., 441,) determined that the disability of one copartner did not save the other from the operation of the sta tute, against whom it ran. The disability of the sister was coverture.
In a series of cases a distinction is taken between cases in which the’light is joint, and where it is several.
In Roe v. Barksdale, (2 Brock. R., 436,) there was a demise by several eo-lessees as heirs at law, in an ejectment. Six were under disability when the cause of action accrued, and were not *290 barred by the statute. One of them was barred. Chief Justice Mabshall said, had they claimed in severalty, it was clear the six could recover, and the defendant would succeed as to the' other. Joint and several demises were laid in the declaration, and the Court allowed a recovery precisely according to the shares barred, and the one not barred.
See, also, Henry v. The Executors of Means, (2 Hill’s S. C. R., 328,) and Ritchens v. Craig. (1 Bailey, 119.) The rule in South Carolina appears to be, that the infancy of one plaintiff will save the statute as to the others; but not so in other cases. Those against whom the act has run cannot recover.
In Neal v. Robertson (2 Dana’s Ky. R., 86,) it was held that a husband suing alone, or with his wife, may be barred by the statute running against him, although upon the cessation of the coverture, she would have the right to sue. This decision was recognized in Downing's heirs v. Ford. (9 Dana, 392.) See, also, The State v. Wilson’s Adm., (3 Harrington’s R., 348,) and McDowell v. Potter. (8 Barr., 189.)
Now what is the legal interest and position of Madame De Pierres as to the property in question ?
Those rights, as defined by the marriage contract, appear to be these: The community of interests is limited, and all' property brought in by the parties is excluded, (Art. 7,) hence the wife and her heirs will be entitled to the amount brought in by her, in case she survives her husband. This dowry given by her parents will, in that case,- go to her. In case of her dying first, her heirs would take it, (Art. 9,) but the income of one-half of the property would then go to her husband for his life, he causing an inventory to be taken in presence of her heirs. (Art. 11.) There are some other clauses not necessary to be stated, such as the one relating to the right of prcedput in the survivor, to be exercised before a division of the estates brought in,
I do not clearly understand whether, under Article 7 or otherwise, the income of all that was brought in by each is to be held in community or not. I presume it was not. The savings only are mentioned.
This instrument has, by the French law, as I understand it, the full effect of leaving or vesting the property, or title to the estate in question, in Madame De Pierres, with the eventual benefit *291 to the husband referred to, and with the right of administration as it is termed, in him. This seems the result of several sections .of the treatise of M. Touillier Du Contrat du Marriage. (Droit, Civile Francaise, tom. 12, §§ 380-383.) The administration of movable or unmovable property excluded from community {realisés) belongs to the husband, unless there is an express agreement to the contrary. And this administration involves the right to receive the revenues. See, also, the authority cited in Le Breton v. Miles. (8 Paige, 261.)
Strangers merely resident in France are affected upon marrying, by what is termed the Legal Community {la communauté legale), and much more by a conventional one. (Touillier, tom. 12, § 91, p. 131.)
By a general rule of law, this contract establishes the rights of the plaintiffs as between themselves according to its provisions as interpreted by the French law, and gives to each the powers incident by that law to the estates or interests created; (Le Breton v. Miles, 8 Paige, 261; Duncan v. Cannan, 23 Eng. L. and Eq., 288;) provided there is nothing prescribed in our own law incompatible with the interests, estates and rights thus created. So far is this from being the case, that I think the contract is in entire harmony with our law, and it results that Madame De Pierres has a separate estate, as we would term it, in this property, which neither her husband nor his creditors could reach or affect, by the law of France, or by our own. The reversion, at least, is to her if she survive, and to her heirs if she die first.
That this right and interest would entitle her to commence this action, and perhaps alone, seems clear. (Code, § 114.) And that under our present system, the union of the husband with her, if objectionable at all, cannot now be taken, is also plain. (Code, §§ 148, 144; 20 Barb,, 342; 12 How. Pr. R., 134.) And judgment could be given in her favor, even if the bar of the statute as to him was deemed insuperable. (§ 274, sub. 1.)
The learned Judge at Special Term treated the communications in evidence as a full acknowledgment in writing of the existing obligation to execute the marriage contract.
Without passing upon this question, we prefer putting-our decision on this part of the case, upon the ground I have men- *292 turned, which presents the point as favorably for the defendants as it can be presented.
It is also answered upon the subject of the statute, that the debt to be secured is not yet payable, and that the obligation to perfect the security is commensurate with the. duty to pay the demand, and the statute cannot begin to run as to one until it begins as to the other. It may be questioned whether, when there is a distinct obligation to pay a debt at a future unexpired period, and another contract, even in the same instrument, to secure that payment, which duty is binding and may be enforced at once, the statute may not apply to the. latter. The contracts and obligations are not merely divisible, but are separated, independent, and in their nature different.- We, however, do not find it necessary to determine this point.
There remains one other point. The judgment directs Mr. Thorn to pay off the mortgage of $70,000 -to the Life and Trust Company, within six months.
By. the contract the rents and profits of this property belong to. him during his life. The dowry was to be paid one month after his decease, if he survived his wife; and the property would revert to him absolutely, I apprehend, upon his daughter dying, ■childless before him, or if her children should so die. This is ■only subject to the usufruct of a moiety for life, given on a certain event to the Baron De Pierres. (Art. 6.)
Mr. Thorn had,, then, a mortgagable interest and estate in the property, viz., his life estate and the contingency of obtaining the reversion.
There is also some ground for supposing that the property is of ample value to discharge all the incumbrances, including the mortgage to be given under the contract.
Still the scope and justice of the' stipulation was, that the mortgage to guaranty payment -of this dowry should be a mortgage to take effect at its date; to preclude any subsequent incumbrances impairing the value of the security or embarrassing its ■enforcement. The mortgage to the Trust Company was in violation of' this right, and of the correlative duty of Mr. -Thorn. Upon the whole, we think that the judgment below cannot be interfered with in this particular.
*293 II. I shall next consider the case in relation to Mrs. Thorn and the judgment against her.
The proof of the execution of the marriage contract was, as before stated, sufficient to establish it upon the trial as against Mr. Thorn, and of course against Mrs. Thorn, unless some difficulty arising from her coverture exists.
At the date of the instrument, the. domicile of Mrs. Thorn, following that of her husband, as well as constituted by birth, was in New York; the lands which the agreement was to affect, were in this State; but she and her husband had resided in Paris for a number of years before its execution. The title to the property was in Mr. Thorn, and she had only an inchoate right of dower in it.
I shall assume that by the laws of France she had effectually mortgaged or hypothecated the property, had it been situated in that country.
■ The objection still is great. No point is better settled than this: that as to real estate, the law of the country where it is situated is to control in all respects; in relation to the enforcement of instruments; to methods of charging or transferring, and to remedies in relation to it; “a title or interest in land can only be acquired or lost agreeably to -the law of the place where the same is situated.” (Hosford v. Nichols, 1 Paige, 220; Cutter v. Davenport, 1 Pick., 81; McCormick v. Sullivant, 10 Wheat., 192, and cases; Warrender v. Warrender, 9 Bli., 127; Monroe v. Douglass, 1 Seld., 447; and 4 Sandf. Ch. R., 126.) “The validity, of every disposition of real property, whether testamentary or inter vivos, must-depend upon the law of the State where the lands are situated.” (Eyre v. Storer, S. Ct. New Hampshire, Month. L. R., Oct., 1858, p. 362; see, also, Waterhouse v. Stansfield, 13 Eng. L. and Eq. R., 465; Chapman v. Robertson, 6 Paige, 627.)
At the date of this instrument the title to the property was in Herman Thorn, and his wife had only an inchoate right of dower. If she had executed it in the same manner in New York; it would have been wholly inoperative. (1 R. S., 758, § 10; Elwood v. Klock, 13 Barb., 50-54; Albany Ins. Co. v. Bay, 4 Comst., 9.)
The counsel of the plaintiffs refers to cases which are plainly distinguishable. They are cases of a separate estate in the wife, technically so known in a court of equity. As to such an estate, *294 she is treated as a feme sole. Stead v. Nelson, (2 Beav., 245,) where an agreement to mortgage was carried into effect, was of this nature. But to treat an inchoate right of dower as separate estate would be novel. ■ The opinions of both Justice Jewett and Justice Pratt, in The Albany Insurance Company v. Bay, (4 Comst., 9,) settle this point very clearly.
It is urged that by the 6th Article of the contract the defendants declare themselves to be the owners of the said property by inheritance, and bind themselves within six months to prove their title thereto.
These words would perhaps warrant the inference of the estate in them being of that peculiar character which a conveyance to husband and wife creates. (Jackson v. McConnell, 19 Wend., 175.) Yet that would be a legal estate, not a separate one, in the sense of a court of equity. If the words indicate a tenancy in common or joint tenancy, the result is the same. And if they could bear a construction of the inheritance, being in Mrs. Thorn, solely, there would be no difference.
The 11th section of the statute, however, (1 R. S., § 758,) “ of the proof and recording of conveyances,” raises the question whether the proof of the execution of the instrument, if sufficient against her husband, is not equally sufficient as against her, so that whatever rights may be adjudged against him upon it may be equally adjudged against her. Upon a careful consideration, I think that this is the result. The letter of the provision undoubtedly warrants this. With a transposition of -clauses, it may be properly and grammatically read thus: When any married woman, not residing in this State, shall join with her husband in any conveyance of real estate situated within this State, the proof of the execution of such conveyance may be the same as if she were sole, and the conveyance shall have the same effect as if she were sole. By section 88, the term “conveyance embraces every instrument in writing by which any interest in real estate is mortgaged, or may be affected in law or equity,” with certain exceptions, hereafter noticed.
I believe the first act which contained any provision as to the execution of deeds by married women, abroad, was that of the 8th of March, 1778. (Van Schaack’s ed. Laws, p. 765.) It re *295 quired the solemnity of an acknowledgment on a private examination before-certain designated officers.
Then on the 6th of April, 1792, (2 Green., 452,) it was enacted, “that in all cases when any married woman, not residing in this State, shall join with her husband in the sale of any lands situate in this State, and shall join in and execute, seal and deliver the conveyance of such lands, every such woman shall be thereby barred of and from all right and claim of dower in the lands, &c., so conveyed.”
By the act of 6th April, 1801, (1 Webs. & Sk., 478,) this provision was reenacted with variations and additions so as to read as follows, “ that where any feme covert not residing in this State shall join with her husband in any deed or conveyance of or relating to any lands or real estate situate within this State, she shall thereby be barred of and from all claim of dower, and all other right and title therein, in like manner as if she-were sole, and the acknowledgment or proof of such deed, conveyance or writing may be the same as if she were sole, and shall entitle such deed, conveyance, or writing to be recorded as aforesaid.”
The provision in the “ act concerning deeds ” in the revision of 1813, (1 R. L., 1813, 370,) was precisely the same.
The 11th section of the Revised Statutes of 1830, is, with immaterial changes of language, precisely the same, omitting, however, the clause, “ and shall entitle the deed, &c., to be recorded.”
In Jackson v. Gilchrist, (15 John. R., 91,) the decision turned upon the effect of a particular statute of the year 1771, but the opinion of the Court, and arguments of counsel laid the foundation of the proposition now settled, that the common law mode of fine and recovery, to pass the real estate of a feme covert, did not prevail in the colony of New York, but by usage it would pass by deed. How that was to be executed, was another question.
In Constantein v. Van Winkle, (2 Hill, 240; 6 id., 177, in error,) the Supreme Court held that a deed executed by a married woman in New Jersey, in 1760, of lands in New York, was not valid to pass her interest. It could be done by deed, but an acknowledgment by her in some form, and before some officer, was always deemed essential. But the decision was reversed and unanimously, in the Court of Errors, and two points seem very fully settled by the decision, that by the ancient usage in *296 the colony of Hew York, independent of ahy statute, a feme covert might, in conjunction with her husband, convey her interest in real estate by deed, without resorting to fine and recovery, and that by force of a statute of 1771, the deed was valid without any acknowledgment at all.
And I consider that the case goes far to determine that, but for statutory restrictions; and apart from the act of 1771, a deed by the customary law of Hew York, was good against a married woman without any acknowledgment, and could be proven as if she were sole, being executed with her husband.
Every Senator who delivered an opinion holds this view.
Then in The Albany Fire Insurance Company v. Bay, (4 Comst., 9,) we find it decided, that by usage and laws of the colony and State, a married woman could convey lands by a deed duly acknowledged, without the concurrence of her husband.
Justice Jewett, in his opinion, (p. 15,) adverts to the distinction established in sections 10 and 11, depending upon the place of residence of the wife; and although what he says may not be treated as even a positive, deliberate opinion, his expressions favor the view of the proof being sufficient in all cases where it will be so, as to the husband. There is but a single restriction or regulation to be observed by a married woman, residing out of this State, in order to alien her lands situated here. It is that “she join with her husbandin the conveyance.
In Meriam v. Harsen, (2 Barb. Ch. R., 232-268,) Chancellor Walworth says, that the act of 1771 and all the subsequent statutes on the subject are merely restrictive of the right which a feme covert possessed by the common or customary law of the colony to convey her estate by deed, with the concurrence of her husband.
In Bool v. Mix, (17 Wend., 128,) Justice Brohsoh takes a similar view.
And Senator Bockee begins his review of the statutes with the charter of liberties of 1683, and holds that the whole series indicate a previous customary law, which the statutes were designed to correct and limit. (6 Hill, 180.)
My conclusion is, that whatever testimony is sufficient upon the trial of a cause, to entitle an instrument to be read against a woman, if she were sole, will be sufficient when executed out of *297 the State, although she is married. This marriage contract is therefore established against Mrs. .Thorn.
It results that the Court can adjudge and declare that the instrument does constitute a valid lien, and charge, by way of mortgage upon the property, as against Mrs. Thorn, precisely the same as against her husband.
Still the question remains, can the Court go further and decree and compel her to execute a new mortgage, so as to enable it to be recorded?
That portion of the marriage contract which rests in covenant or contract; as to execute an instrument in such form as would entitle it to be recorded in Hew York, or to make title in six months, could never be enforced against her, had the paper been executed in this State. (Martin v. Dwelly, 6 Wend., 9; Jackson v. Vanderheyden, 17 Johns., 167; Atwater v. Buckinham, 5 Con. R., 492; Carpenter v. Schermerhorn, 2 Barb. Ch. R., 814.)
Yet the argument which is to be drawn from the statute, (if our construction of it is right,) is very strong. Connecting the 11th and the 38th sections, we have this provision, that any instrument executed by a married woman abroad, whereby the title to real estate may be affected at law or in equity, shall have the same effect as if she were sole. If, as we clearly hold, the creation of the equitable mortgage, apart from any covenant, justifies the Court in adjudging Mr. Thorn to execute a perfected mortgage, to be recorded, the principle and statute almost conclusively settle the same point as against her.
Yet another clause of the 38th section should not be unnoticed. In defining the term “ conveyance,” as used in the act, there is the exclusion of “executory contracts for the sale or purchase of lands.” And section 39 provides, thát “• executory contracts for the sale or purchase of lands,” when proved or acknowledged in the manner prescribed in the' chapter, may be recorded, &c., and be read in evidence.
Thus it may be urged that whatever is contained in the instrument effectually to create a charge or lien by way of mortgage in itself, may be adjudged and established as such against a married woman, while whatever in the same instrument depends upon contract, is executory, as it is not made obligatory by the *298 act, but is in substance excluded from its operation, must be governed by the general law, viz., the lex rei sitae.
But this clause may, we think, be very properly restricted to contracts for sale, altogether executory, where no estate or interest, legal or equitable, has been created in the land by the instrument in question, but all rests in covenant. And thus the absolute creation of an equitable charge upon the estate or interest Mrs. .Thorn possessed, and the obligations incumbent upon her arising from such creation, are governed and shaped by the important 11th section which has been discussed.
The judgment is therefore affirmed, with costs.