No. 46.—James Holmes, administrator, plaintiff in error, *vs.* John Liptrot, administrator, defendant.

[1.] Where L and T executed a marriage settlement, in contemplation of marriage, in which L, the intended wife, declared that it was her desire that all her property should be kept and assured to her *separate use* and enjoyment *forever*, and that her trustee should keep, preserve, and assure the same *forever* unto L, the intended wife, to *her entire and free* use, control and benefit, free and exempt from all *debts* of T, the *intended husband*, now existing against him, or which shall hereafter exist; and T, the intended husband, *assented* and *agreed* thereto, in consideration of the intended marriage, and the further consideration of one hundred dollars, received from his intended wife as a marriage portion: *Held*, on a bill filed by the administrator of the husband, against the administrator of the wife, to compel the latter to make distribution to the representative of the husband, that the husband, by the *words* and clear *intention* of the marriage settlement, not only relinquished and abandoned his *marital rights* to his intended wife's separate property, *during the coverture*, but *forever*, without limitation of time ; and that the administrator of the wife was entitled to retain the *property*, and after the payment of the wife's debts, to distribute to her children.

Bill for discovery, account, &c. in Houston. Decision by Judge Stark, at October Adjourned Term, 1849, to wit: in January, 1850.

This bill was filed by James Holmes, as administrator of Henry Talton, against John Liptrot, as administrator of Camilla Talton, deceased.

Camilla Talton—while the widow Liptrot—entered into an ante-nuptial settlement with Henry Talton, the material parts of which are as follows : " The said Camilla being desirous of enjoying, maintaining and keeping all and singular her lands, negroes, and other property, real and personal," &c. also, what " shall be received from her father's estate, at his death, in case she should then be living, separate and distinct from all the property of her said intended husband,"—" and being desirous that all her said property shall be kept and assured to her separate use and enjoyment *forever ;* and the said Henry Talton hereby assenting and agreeing thereto, in consideration of the marriage portion aforesaid, ($100) and of said intended marriage," it was agreed that the trustee should " keep, preserve and assure the same *forever* unto said Camilla, and to her entire and free use, control and benefit, free and exempt from all and every liability, obligation or charge of judgments, debts, demands, or contracts, now existing, or which shall hereafter exist, against said Talton."

And said Talton " covenants and agrees that he will not oppose or obstruct the said trustee in the due and proper execution of his trust, but will aid him in behalf of said Camilla." Signed by the parties and the trustee also.

Camilla died—her husband surviving her. Talton afterwards died in possession of the trust property. John Liptrot administered on Camilla's estate, and J. Holmes on Talton's estate. Liptrot, in trover, had recovered the property (slaves) from Holmes, who now files this bill in right of the intestate husband—claiming his right to the sole administration, without accountability, of his deceased wife's estate.

That part of the Court's charge excepted to, is as follows : " It is the opinion of the Court, that a legal construction of this contract hinders, at once and *forever*, the dominion of the husband, as well as all his then present and future creditors, from any and all right to this property ; and that after the payment of the debts of Camilla, and the expenses of administration, it must descend, as it ought, to her children."

Complainant requested the Court to charge, that unless the settlement made provision for the property vesting in the children

of said Camilla, after her death, or in some other way, made a limitation over, that the husband was entitled, after her death, to recover it, as her administrator, and his representatives are now entitled to recover from defendant, which the Court refused.

And to this, complainant's counsel also excepted, and thus the case comes up.

Poe and Giles, for plaintiff in error, cited the following authorities:

1 *Kelly*, 389.    *Rochell vs. Tompkins*, 1 *Strobhart's Eq. R.* 114.
1 *McMullan's Eq. R.* 201.    *Allen vs. Rumph*, 2 *Hill's Ch. R.* 1.
*Barkins vs. Giles, Rice's Eq.* 315.    *Stewart vs. Stewart,* 7 *John. Ch. R.* 229.    *Pickett vs. Chilton,* 5 *Munf. R.* 467.

S. G. Hunter and S. T. Bailey, for defendant, cited—

*Broom's Legal Maxims,* 120, 198.    16 *John. R.* 172.    2 *Black. Com.* 209, 241.    8 *Bacon*, 274, 280.    9 *John. R.* 123.    3 *Vesey,* 246.    4 *Ga. Rep.* 377.

*By the Court.*—Warner, J. delivering the opinion.

[1.] This is a bill filed by the administrator of Henry Talton, against the administrator of Camilla Talton, for distribution of the estate of Camilla Talton, in the hands of her administrator. It appears from the record, that in the year 1834, Henry Talton and Camilla Liptrot entered into a marriage settlement.    Camilla Liptrot was then the widow of Hopkins Liptrot—had one child, and was possessed of considerable property; that she intermarried with Talton, and died, leaving her husband, Henry Talton, and two children by the latter marriage, surviving her.    Camilla Talton died intestate.    Subsequently, Henry Talton died intestate, without having taken out administration on his wife's estate. The record also shows, that independent of the *separate* estate of Camilla Talton, his former wife, the estate of Henry Talton was not sufficient, by several thousand dollars, to pay his debts.

The great question in this case is, whether the administrator of Camilla Talton can be compelled to make distribution to the administrator of Henry Talton.

The decision of this question must depend on the construction to be given to the marriage settlement. If, by the terms of that settlement, the marital rights of Henry Talton to the property of his intended wife, Camilla, were not *forever* relinquished and abandoned, but only suspended *during the coverture*, then, upon her death, without having made any disposition of the property in her lifetime, the marital rights of the husband would attach to the property, by operation of law, and the complainant is entitled to recover. *Stewart vs. Stewart*, 7 *John. Ch. Rep.* 229. But if, by a fair and liberal interpretation of the *words* of the marriage settlement, Henry Talton not only relinquished and abandoned his *marital rights* to the property of his intended wife, *during the coverture*, but *forever*, then his administrator is not entitled to recover, for he is bound by the contract of his intestate.

It has been insisted on the argument, that the right of the complainant to recover, was settled by the judgment of this Court, in *Liptrot vs. Holmes*, 1 *Kelly*, 381. The question made by the record in that case was, whether the administrator of Camilla Talton was entitled to maintain an action of trover, for the recovery of certain slaves, or whether the *legal title* to the slaves was in the *trustee* of Camilla Talton, under the marriage settlement.

This Court held, that the *legal* title to the property was not in the *trustee*, but in the administrator of Camilla Talton, and that he had the *right* to reduce the property into his possession, as her administrator; but the *question* as to *whom* the administrator of Camilla Talton should make *distribution* of the property, when reduced to his possession, was not made by the record in that case, nor was that question considered or adjudicated by this Court. We will now proceed to consider the marriage settlement executed by the parties in 1834, in contemplation of their intended marriage.

After reciting the property of which Camilla Liptrot was possessed and in expectancy, the contract further recites : " Whereas, a marriage is this day intended to be had and solemnized be·tween the said Henry Talton and Camilla Liptrot, with whom the said Henry is to have and receive the *sum of one hundred dollars in money, as for her marriage portion ;* and the said Camilla Liptrot, being desirous of enjoying, maintaining and keeping all and singular the lands, negroes, and other property, real and personal, which shall be assigned to her on distribution of the estate

of said Hopkins Liptrot, deceased, and also, all and singular the property, real and personal, that shall be given to her by her said father, Aquilla Liptrot, and also, which shall be received by her from her father's estate after his death, in case she should then be living, and the increase of said property, separate and distinct from all such property, real and personal, as shall be acquired, claimed or owned, or which is now claimed or owned by the said Henry Talton, her intended husband, in the event of their intended marriage. And the said Camilla Liptrot being further desirous that all and singular the said property, and increase thereof, when assigned or delivered to or received by her, as hereinbefore contemplated, shall be kept and assured *to her separate use and enjoyment forever ;* and the said Henry Talton hereby *assenting* and *agreeing* thereto, in consideration of the marriage portion aforesaid, and of the intended marriage—it is, therefore, covenanted and agreed by and between the parties to these presents, in manner and form following : that is to say, the said Henry Talton and Camilla Liptrot have made, constituted and appointed, and do, by these presents, make, constitute and appoint the said John Liptrot, trustee for the said Camilla, and for all and singular her property, real and personal, hereinbefore referred to, and of the increase thereof, to keep, preserve and assure the same *forever* unto the said Camilla, and to her entire and free use, control and benefit, free and exempt from all and every liability, obligation or charge of any and all judgments, debts, demands or contracts now existing, or which shall *hereafter* exist, against him, the said Henry Talton. And for the full, faithful and perfect performance of every part of this agreement, the parties bound themselves," &c. See the entire agreement, 1 *Kelly,* 382.

"Marriage settlements," says Chancellor *Kent,* "usually proceed from the prudence and foresight of friends, or the warm and anxious affection of parents ; and if fairly made, they ought to be supported, according to the true *intent* and *meaning of the instrument* by which they are created. A Court of Equity will carry the intention of these settlements into effect, and not permit the intention to be defeated." 2 *Kent's Com.* 165. *Methodist Episcopal Church vs. Jacques,* 3 *John. Ch. Rep.* 88. In *Horry vs. Horry,* (2 *Dessaussure's Eq. Rep.* 125) the Court said, " in marriage settlements, the most *favorable exposition will be made of words,* to support the *intention* of the parties."

It is true, that the *intention* of the parties cannot *control the law,* but it is legitimate to look into the instrument for *words,* as evidence of the *intention* of the parties, so as to take it out of the general rule of law, as to the *marital* rights of the husband; especially when there are children of the marriage unprovided for, as in this case. In *Groves vs. Clark,* (15 *English Ch. Rep.* 140) *the Master of the Rolls* said, "that a settlement upon a married woman is, without a special agreement to the contrary, always understood to invoke a provision for the children." But here, we must be governed, as to what was the *intention* of the parties, by the *words* of the instrument. Was it the intention of the parties, that the *marital rights* of Henry Talton, to the property of his intended wife, should only be suspended *during the coverture,* as in the case of *Stewart vs. Stewart;* or did the parties look *beyond* the termination of the coverture? It is to be remarked, that by the terms of the settlement, the husband is not even to have the *use* of any portion of the property *during the coverture.* In what manner does the instrument declare Camilla Liptrot is desirous to secure the property to her separate use and enjoyment? Does she only desire to have it so secured *during the coverture?* The words of the instrument answer the question, by declaring the parties intended it should be secured to her separate use and enjoyment *forever.* She is not only desirous that the property shall be secured to her separate use and enjoyment during the coverture, but *forever;* that is to say, it is never to belong to Henry Talton, in any event whatever. Such is her declared *intention,* in our judgment, by a fair and liberal construction of the *words* of the instrument. To which declared intention, Henry Talton, her intended husband, *assented* and *agreed* thereto, (as the words of the instrument declare) in consideration of the one hundred dollars, which she paid him as a marriage portion, and in consideration of the intended marriage. Her proposition to him is, in substance, (as it appears from the instrument) I will marry you, and give you one hundred dollars, as a marriage portion, provided you will *forever* relinquish all claim to my property.

To this proposition, the intended husband appears to have *assented,* and his administrator is now bound by the stipulation of his intestate. The stipulation, as to the protection of the property from the *debts* of Talton, evidently looks *beyond* the termination of the coverture. The property is not only to be protected

against the debts of Talton during the *coverture*, but *forever*.   The true intent and meaning of the parties to this marriage settlement undoubtedly was, from the words of it, that neither Talton nor his creditors, should ever have the benefit of his wife's separate property, either during the coverture, or at any *other time*. Talton, the intended husband, did not, nor did he intend, by the *words* of the instrument, merely to abandon his marital rights to the property *during the coverture*, but he did, and so intended, to abandon them *forever*, for the consideration stated.   The only two cases cited on the argument, most analagous to this, were, *Baskin vs. Giles, Rice's Eq. Rep.* 315, *and Suggs vs. Tyson,* 2 *Hawk's Rep.* 472.   In *Baskin vs. Giles,* the Court were divided in opinion, and in *Suggs vs. Tyson,* it was held, the marital rights of the husband were defeated.   In the view which we have taken of this marriage settlement, we hold, that Henry Talton abandoned his marital rights to the property of his intended wife, not only *during the coverture,* but *forever,* without any limitation of time; and that her administrator is entitled to retain the property, and after the payment of debts, to distribute it to the children of his intestate.

Let the judgment of the Court below be affirmed.