## MASON *et al., vs.* DEESE.

1. A marriage settlement which provides that the wife's property and its proceeds shall "*never*" be subject to the control nor the contracts of the husband, seems to intend his exclusion after the death of the wife, as well as during her life; but it may be submitted to a jury, to be construed in the light of the circumstances which surround the parties at the time of the marriage.

In Equity, in Wilkinson Superior Court. Tried before Judge HANSELL, at April Term, 1860.

This was a bill brought by James Mason, as administrator of Susan Lowe, formerly Susan Mason, deceased, and the other plaintiffs in error, as her brothers and sisters, and heirs at law, against Joel Deese, as administrator of Lunsford Lowe, deceased, the husband of said Susan. The substance of the case made by the bill is, that the said Lunsford and Susan intermarried, first executing a marriage settlement, which is as follows:

" GEORGIA—LAURENS COUNTY:

" This indenture tripartite made and entered into this 5th day of April, in the year of our Lord one thousand eight hundred and forty-five, between Susan Mason, Lunsford Lowe, and James Mason, trustee of and for Susan Mason, as follows: Whereas, a marriage by Divine Providence is contemplated to be had and solemnized in a short time between the said Susan Mason and the said Lunsford Lowe; and whereas the said Susan Mason is seized and possessed, in her own right, of some valuable property, to-wit: a stock of neat cattle, and as one of the legatees of Turner Mason, her deceased father, she is entitled to a considerable property, both real and personal, consisting of lands, negro slaves and other personal property to a large amount, the value of which cannot at present be ascertained, but it is expressly understood and agreed that so soon as a division of the estate shall be had, that a schedule of the part of the said estate that shall or will fall to the said Susan Mason shall be annexed to, and form a part of this settlement and agreement. Now, in order to secure for the sole and separate use of the said property to the said Susan Mason, in the event that the said contemplated marriage does take place the said Susan Mason, by and with the consent of the said Lunsford Lowe, which is evinced by his becoming a party to the agreement and settlement, and signing the same, in consideration of the said contemplated marriage, and for the further consideration of five dollars to her in hand well and truly paid by the said James Mason, at and before the sealing and delivery of these presents, the receipts whereof is hereby acknowledged, hath granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell, alien, convey and confirm unto the said James Mason, and his heirs and executors, all the before mentioned stock of neat cattle, the artificial marks of which, and the number of which, when ascertained, shall be annexed, by way of schedule, to this agreement and settlement; also, the legacy which is left to the said Susan by the last will and testament of her said father, Turner Mason, which, when assigned and turned over to her by the executor of the said testator, shall also be annexed, by way of schedule, to this agreement, and shall form a part and parcel thereof, and the same is to be held by the said James Mason and his heirs and executors upon the following trusts, stipulations and

Mason *et al.*, *vs.* Deese.

conditions of, and concerning the same, as follows, to-wit: that the said property nor any part thereof, or the proceeds, profits or hire thereof is never to be subject to the control, contracts or liabilities of the said Lunsford Lowe heretofore made or entered into by him, and also upon the further trust and condition that the said property, and every part and parcel thereof, shall remain in the possession of the said Susan and the said Lunsford Lowe, in the event that the said marriage shall take place, and that she shall also have, take and appropriate the proceeds, hire and profits thereof in such manner as she shall deem fit and proper for the support, comfort and maintenance of herself and her family, including the said Lunsford Lowe during their joint natural lives and living together, and also upon the further trust and condition that after the death of the said Susan, in the event that she shall leave a child or children by the said marriage, then the said property and every part and parcel thereof shall go to and vest in the said child or children in *fee simple;* and upon the further trust and condition that, in the event there shall be no child or children of the said marriage, then the said Susan shall have the right to dispose of the said property by deed or by last will and testament, or in such mode as she may adopt, which shall not, however, take effect or deprive her of the possession of the said property during the term of her natural life; and also upon the further trust and condition that in the event that at any future time it may be deemed proper by the said Susan that a part or portion of the said property should be sold for the purpose of supporting and maintaining the said Susan and her family, or for changing the said property and investing the proceeds of the same in other property which the said Susan might deem more suitable or profitable, then she shall have the right to do so, by the consent of the said James Mason, and the deed in writing of the said Susan and the said James Mason shall be a sufficient conveyance of the said property, and the property so purchased with the proceeds of the property so sold, shall be held in the same manner, and be subject to the same conditions and limitations as that hereinbefore conveyed, and the said Lunsford Lowe covenants, promises and agrees that he will exercise no greater power or authority over the property hereinbefore conveyed than he is authorized and permitted to do by this settlement and agreement, and the said

Mason *et al.*, *vs.* Deese.

James Mason, trustee, promises and agrees, on his part, that he will faithfully execute, perform and fulfill all things hereinbefore agreed to be performed and done on his part.

"In testimony whereof, the said Susan Mason, Lunsford Lowe and James Mason have hereunto set their hands and affixed their seals the day and year first above written.

"Signed, sealed and delivered in the presence of

"REBECCA DAVIS,                    ⎫  SUSAN MASON,  [L. S.]
                    his                    ⎪
"WILLIAM A. J. ⋈ BRITT,   ⎬  L. LOWE,            [L. S.]
                    mark.                  ⎪  JAMES MASON. [L. S.]
"JACOB T. LINDER, J. P.   ⎭

"GEORGIA,            ⎫  Clerk's office Superior Court, re-
"LAURENS COUNTY:  ⎬ corded in book C, pages 130, 131,
                            ⎭ 132 and 133.   Sept. 17th, 1845.
                            "FRANCIS THOMAS, Clerk."

It is further alleged that Lowe was insolvent at the time of the marriage, and that his insolvency was one of the reasons for the settlement. The allegations further are, that the wife died, leaving the husband surviving her; that he then died, and the defendant, Deese, took out letters of administration upon his estate, and under that authority took into his possession, as the property of his intestate, the negroes and other property which was covered by the settlement, and sold the negroes under an order at public outcry, but had some of them bought in for his own use. Also, that said Deese had possession of the title papers of the real estate covered by the settlement. The prayer of the bill was for a discovery of the defendant's acts in relation to the property and of the amount of the notes, which the complainants alleged they did not know, and that he might be decreed to deliver up the title papers, and account fully for all the property covered by the marriage settlement with the complainants, as administrator and heirs at law of the deceased wife, Susan Lowe. There was a general demurrer to this bill, and the Court, on the hearing, dismissed the bill for want of equity. The complainants excepted, and assign the decision as error.

Y. J. ANDERSON, E. A. & J. A. NISBET, and JUNIUS WINGFIELD, for plaintiffs in error.

H. M. MOORE, A. E. COCHRAN, and S. T. BAILEY, for defendants in error.

*By the Court.*—STEPHENS, J., delivering the opinion.

The sole question in this case is, whether or not it was the *intention* of this settlement to exclude the husband from his marital rights after the death of his wife? The words of the exclusion constitute the first trust or condition declared by the settlement, and are as follows: "The said property nor any part thereof, or the proceeds, profits or hire thereof, is never to be subject to the control, contracts or liabilities of the said Lunsford Lowe, heretofore made or entered into by him, or that shall hereafter be made or entered into by him." By these terms, from *what*, or how much is he excluded, and during what *time*, or how long is he excluded? It was suggested that these terms fail to effect any exclusion at all, upon the idea that their real intention was not the lawful one of excluding the interest which the husband would acquire by the marriage, but the unlawful one of protecting that interest from his debts, and that the intention being illegal must fail. It is true that the form of phraseology indicates that the parties were looking to the security of the property from the husband's debts, as a leading purpose, but the plain legal effect of the language used, is the complete exclusion of his interest during whatever period the exclusion operates. The property is saved from his *control*, as well as his contracts, and is guarded against *him*, as well as against his creditors. He who has no *control* over a thing, nor any power of subjecting it to his contracts or liabilities, has no *property* in that thing. Take away these, and I know not anything that is left. The words used effectually negative the husband's interest, and there are no other words to contradict or qualify them. To conclude that an interest was intended to be left in him during the period in which this clause is to have effect, is to impute an intention to the parties upon a mere surmise, in opposition to the plain effect of the words which they have used to express their intention. The exclusion is complete so long as it lasts. During what time, or how long does it operate? It is clear that the literal sense of the term excludes him forever, as well after the

death of his wife as during her life; for the property, corpus and proceeds, is *never* to be his. But it is said that this being the conceded literal sense of these words, they must be construed in the light of, and restrained by, the preceding words, which declare the object of the settlement to be the securing of the property to the sole and separate use of the wife. It is said that this purpose being declared *in limine*, must be regarded as a general intent covering and limiting the scope of the whole instrument, and that this general intent being itself confined in its operation to the lifetime of the wife, confines the operation of all the provisions within the same period. This position is untenable, because it is in plain conflict with one of the clearest and most important provisions in the whole settlement—the provision for the issue of the marriage. This provision, so far from being confined in its operation to the life time of the wife, as the agreement requires that it should be, begins its operation only after her death. This proves that what is claimed as a general intent covering and limiting all the provisions of the settlement, is not what it is claimed to be. It *fails* to cover one of the leading and most clearly expressed purposes of the settlement; and failing to cover one, may it not fail to cover another? One clear failure breaks down the reliability of that clause, as a guide in the construction. This, therefore, is no reason, nor does any other reason occur to me, for cutting down and limiting the literal and natural force of the word " never." On the contrary, it seems to me that this word must have its full force, operating after the death of the wife as well as during her life, in order to give meaning to all the parts of the settlement. This exclusion which receives great prominence from being placed *first*, was wholly *useless*, unless it was intended to have effect after the death of the wife; for the very next clause secures the sole and separate use of the property to *her* and her family (including him so long as he may continue a member of her family) during her life, and thus, by a single provision, exhausts the alleged general intent. Again, the last thing which the husband did was to covenant that he would exercise no greater power or authority over the property than he was *authorized* to do by the settlement—not by the *marriage* as regulated by the settlement, but by the settlement itself. He was to do nothing, unless *empowered* by the *settlement*. This indi-

cates, to my mind, that the parties considered that they had established the basis of total exclusion in the first place, and that all which the husband could take, was to come by being expressed and conferred in subsequent clauses of the settlement, and not come as an unbarred *residuum* of marital rights. The settlement does confer on him two benefits: the provision for his support so long as he might continue a member of his wife's family by living with her, and the *chance* of being her legatee in the event of her dying without issue. The value of that chance depended very much, if not wholly, upon his solvency or insolvency at the time when the wife should come to exercise her appointing power. I have no doubt it was the expectation of both husband and wife, when they made the settlement, that she would exercise that appointing power in his favor, if he should be in a condition to reap the benefit for himself, but that she would not do it if his creditors were to pocket her estate. So much as to my own views of this settlement. Judge LYON and myself arrived at exactly opposite conclusions, he thinking that the husband was not excluded after the death of the wife, and I thinking that he was, each of us founding his opinion upon the terms of the settlement itself. Judge LUMPKIN thought that it was not perfectly clear from the settlement itself, that the husband was intended to be excluded, and that the settlement had better be submitted to a jury to be construed in the light of the surrounding circumstances, particularly the alleged insolvency of the husband when the settlement was made. His view and mine, though not the same, necessarily led to a reversal of the judgment below, which coincided with the view of Judge LYON. Judge LUMPKIN and myself then had to give direction to the case on the new trial which we had awarded. As he could not go so far as I had gone, I fell back upon his position as the only possible solution of the difficulty, and we united upon that as the instruction for the future government of the case. I will add a few words in explanation of the important light which may be derived from the insolvency of the husband at the time of the marriage, if that fact really existed as alleged in the bill. Its significance does not consist in its being a motive to the settlement, though in point of fact, it very probably was a leading cause of the settlement, but in its being a probable motive to that particular part of the settlement which clothes

the wife with an appointing power in case of her death without issue. Supposing this provision to have been inserted with a view of exercising it for his benefit, in case he should afterwards get in a situation to profit by his wife's bounty, (a very reasonable and probable supposition,) then the parties must have considered that *without the exercise of that power*, the effect of the settlement was to exclude him after her death. I am obliged to think that the present case is a much stronger one for the exclusion of the husband than another in which this Court excluded him. See *Holmes vs. Liptrot*, 8 *Ga. Rep.*, 279.

Judgment reversed.