## Robert L. McLeod et ux. v. Richard S. Board.

Where property was conveyed in trust by a marriage contract, and the heir of the wife, who claimed the remainder, sued, and averred that the trustee was dead, and his heirs did not reside in the state, although it was urged that the trustee was a necessary party, and the petition was dismissed upon a general demurrer, the court declined to consider the question of parties.

See the statement of the case and the opinion for a marriage settlement which might be within the rule in Shelley's case, and yet the question was whether the husband did not exclude himself from any right as heir.

Equity will always carry the intention of a marriage settlement into effect, when that intention is explicit and certain.

Where the averment was, that the intention of the settlement was to exclude the husband from any interest in the estate, not only during his life, but after his death, and the deed seemed to bear out that intention, it was error to sustain a general demurrer to the petition of the heir.

As to the question of comity in regard to descents and distributions, where there has been a marriage settlement, the *lex loci contractus*, by positive

*ante-nuptial* agreement, may be made the rule for determining the parties who shall take as heirs or distributees, on the failure of the wife to dispose of the property by will or otherwise, as well as to govern the construction of the contract in all other respects, and especially in respect to its control in the partition and disposal of the property acquired after a change of the domicil from the state of the marriage. (Paschal's Dig., Arts. 4632, 4639, Notes 1040, 1046.)

Where the husband has, by marriage contract in South Carolina, excluded himself from all interest in the property of his intended wife, both before and after marriage, the averment of her sister, that she was the only heir, was the statement of a good cause of action, although she stated that she was heir according to the laws of South Carolina.

APPEAL from Harrison.   The case was tried before Hon. CHARLES A. FRAZER, one of the district judges.

The suit was to recover two slaves and the increase of one of them.

The case turned entirely upon the sufficiency of the petition upon demurrer.

The facts of the case embodied in the petition were as follows:

On the 13th December, 1835, in the State of South Carolina, Mary W. Michan and Benjamin S. Mitchell were intending to marry.   She owned two negroes, Simon and Bina; and in consideration of said proposed marriage the parties made a marriage settlement, by the terms of which the said Mary "granted, bargained, sold, and delivered to Mina McCoy, who was a party to the settlement, the said negroes, to have and to hold to him, the said Mina McCoy, his heirs, executors, and administrators, the said slaves Simon and Bina, with the future issue and increase forever, in trust and for the sole and separate use of the said Mary for and during her natural life, not subject to the debts, incumbrances, charges, demands, power, or control of the said Benjamin, or any future husband, to pay over to the said Mary the hire aforesaid of the labor of said slaves, and their future issue and increase, to and for her sole and separate use; or, at the option and choice of her, the said

Mary, to permit her, notwithstanding her coverture, to hold and possess, use and enjoy, said slaves, with their issue and increase, without the same, or any part thereof, or their hire, or the profits of their labor, being in any way subject to the debts, liabilities, or control of the said Benjamin, or any future husband that she might have; and that, if the said Mary should depart this life without leaving issue alive at the time of her death, and without disposing of her separate estate by last will and testament, then and in that case the said Mina McCoy should hold said slaves, with their issue and increase, in trust, to convey the same to her, the said Mary's, heirs at law, to be divided according to the statutes of the State of South Carolina." The marriage took place immediately. In January, 1840, the parties removed to Texas, and on the 1st day of June, 1841, Mrs. Mitchell died in Texas, without children or their descendants, without father or mother, brother or sister, except her half sister, the plaintiff Harriet, and without disposing of her separate estate by will, and was survived by her husband, the said Benjamin. She elected upon her marriage to take possession of the slaves, and had the possession and use of them until her death.

The trustee is dead, and his heirs, executors, and administrators live beyond the limits of the State of Texas, and are prayed to be made parties upon their coming into the jurisdiction of the court. The prayer is to recover the slaves and damages for their detention.

To this state of the case the defendant interposed a demurrer, which was sustained by the court below, with leave to the plaintiff to amend, which was declined, and judgment final rendered for the defendant. The correctness of this ruling is the only matter for discussion.

*A. H. Wilson*, for appellant.—I. The demurrer was sustained, under a misapprehension of the rule in Shelley's case, which does not apply to contracts of this kind.

II. The marital rights of the husband attach to all the personal property that his wife has in her possession at the time of their marriage, and it becomes absolutely his. He may, however, entirely exclude those rights by an *ante-nuptial* contract, executed by himself and wife, not only during her life, but forever afterwards. And whenever the question comes up, exclusion or no exclusion, the intention is the first matter of inquiry, and if it can be ascertained by any of the known rules of construction, and is consistent with the principles and the policy of the law, it will be recognized and enforced as the law of the contract, by which their respective rights are to be governed. If such a contract be valid, and the marital rights excluded, the question may then very properly arise whether the husband, after the death of his wife, can be let in to take the property, or any part of it, as *personæ designatæ* in the instrument, under the intention therein manifested. These views are fully supported by the following cases and authorities: 2 Kent., 165; 1 Rop. on Prop., 326, 327, 328, 329; Bailey v. Wright, 18 Ves., 49; Watt v. Watt, 3 Ves., 244; Holmes v. Liptrot, 8 Ga., 279; Roberts v. Digwell, 1 Atk., 607; Smoot and Nicholson v. Lecatt, 1 Stew., 590; Williams v. Claiborne *et al.*, 7 S. & M., 488; same case, 1 S. & M., Ch., 355; Brown's Administrators v. Brown's Administrators, 6 Hump., 127; Hamrico v. Laird, 10 Yerg., 222; Stilley v. Folger, 14 Ohio, 659; Neves v. Scott, 9 How., 196, 210; Robinson's Administrator v. Brock, 1 H. & Munf., 213; 2 Story's Eq., 1379.

[Mr. Wilson quoted many of these authorities at great length, and, upon the suggestion of Chief Justice WHEELER, the case was re-argued upon the question of the intention of the parties.]

*Hill & Hill*, for appellees. — I. It will be observed that this is simply an action at law to recover the slaves, and damages for their detention. The plaintiffs therefore must

xxx—16

establish a valid legal title to the slaves. If the marriage agreement had not been made, the negroes would, by the fact of marriage, have become the absolute property of the husband, it being conceded that the common law was in force in South Carolina at the date of the marriage. · The agreement, being in derogation of the common law, must be strictly construed. The effect of the agreement was to vest in the trustee the legal title. If it did not have this effect, the legal title remained in Mary Michan, and upon the marriage vested in her husband. If it did have this effect, the legal title passed into the trustee, encumbered only with the trusts specifically declared in the articles of settlement; and in him, or, if he is dead, in his heirs, executors, or administrators, it reposes still. The trustee, holding the legal title, must bring and maintain the suit, unless some valid legal cause to the contrary is shown. (Hill on Trust., 386 text, and note 1.)

King v. Hill, 20 Ala., 133, decides, that a *cestui que trust* of personal property cannot interpose a claim (under the statute) to try the right of property, and the reason given is that the trustee has the legal title."

II. The deed provides, that upon the death of Mrs. Mitchell without issue, or without having disposed of her separate estate, the trustee should still hold the slaves, and convey them to the heirs at law of Mrs. Mitchell, to be divided according to the statutes of South Carolina. The petition states that Mrs. Mitchell died in 1841, without issue, without father, mother, brother, or sister, except the plaintiff, Harriet, who is only half sister, and that, according to the laws of South Carolina, Mrs. McLeod is the only heir at law. When the statutes of another state are relied upon, they must be be plead and proved, as any other fact must be. The statute is a fact, must be stated and set out as a fact, must be proved by its production to the court, and then the court will construe it, and deduce from it the legal conclusions pertinent to the case.

Re-argument being ordered: There is no question as to the rule of the common law, that where, under a deed, will, or other writing, a person takes an estate for life, with a limitation over to the grantor's heirs or heirs of his body, as a class of persons to take in succession, the estate for life is, as to real property, enlarged into an estate of inheritance; and as to personal property, it makes the tenant for life absolute owner. (4 Kent, 215–227; Hancock v. Butler, 21 Tex., 804; Hawkins v. Lee, 22 Tex., 546; O'Brien v. Hilburn, 22 Tex., 623, 624.)

[They elaborated this point by many quotations.]

Moore, C. J.—The appeal in this case presents for our consideration a judgment of the district court sustaining a general demurrer to the petition of the appellants, the plaintiffs in that court. It is therefore improper, as well as unnecessary, for us at present to enter upon a discussion of questions not necessary for the determination of the correctness of this ruling of the court on the demurrer; consequently we shall not follow counsel in the argument which has been furnished us on several interesting and important questions which might arise on special exceptions, or in a trial on the merits of the case.

The demurrer seems to have been sustained upon the supposition that the clause in the contract, under which the plaintiffs set up title, that in case the *cestui que trust* in the deed should die without issue at the time of her death, and without having disposed, by last will and testament, of the property settled in said deed to her separate use, said trustee should hold the property in trust to convey the same to the heirs at law of the *cestui que trust*, to be awarded according to the statutes of the State of South Carolina, should be construed as words of limitation, and not of purchase, in favor of such heirs. We deem it unnecessary to enter into a critical examination of this deed to determine whether this is the construction which should be given it.

It may be admitted that the language used in this deed brings it within the rule in Shelley's case, and that the entire trust estate vested in the *cestui que trust*, without condition or remainder. Yet the question still remains, whether by the marriage contract the husband has not excluded himself from all interest in the property, *jure mariti*, as well after the death of the wife as during her life. That the husband may be excluded, by an express stipulation, from all interest or participation in the distribution on the death of the wife of property settled by marriage contract to her sole and separate use is not a matter of dispute. Such exclusion unquestionably must be clearly and obviously manifested by the contract; but, when this is the case, effect must be given to the intention of the parties in this as in other particulars. "A court of equity," says Chancellor Kent, "will always carry the intention of these *settlements into effect, when that intention is explicit and certain.*" (Methodist Episcopal Church v. Jaques, 3 Johns., 89.)

The averments of the petition, in respect to the terms and stipulations of the contract in this case, lead unmistakably to the conclusion, that it was the intention of the parties that no interest whatever in the property should vest in the husband by reason of the marriage, either during the life of the wife or at her death. In the case of Ward *et al.* v. Thompson, 6 Gill & Johns., 349, which turned on the validity and effect of a marriage agreement which did not more plainly exclude the husband from all interest in the separate estate of the wife than is done in the case at bar, the court says: "He, the husband, has not only made a temporary surrender of his marital rights in the estate in question during his wife's life, but has abandoned them forever."

In the case of Williams v. Claiborne, property, real and personal, was conveyed in trust by a marriage settlement, executed by Benjamin Williams and Jane Haggatt, on the

.eve of their intermarriage, to their use during their several lives, and after their deaths to the use of the heirs of the body of said Jane by said Benjamin to be begotten, and in default of such heirs, then to the right heirs of said Jane. · It was contended by the plaintiff's counsel that the limitation over to the heirs of Jane Haggatt was void, for the reason that the settlement created a fee tail in the first users, which, under the laws of Mississippi, immediately executed in them a fee simple in joint tenancy. The court, however, was governed by the intention, as gathered from the whole instrument, and decided that Williams, on the death of his wife, had no interest in the property then conveyed, or right to participate in the proceeds, increase, or profits of it. (7 Smedes & Mar., 488.) If deemed necessary, abundant authority to the same effect might be easily supplied. (Bailey v. Wright, 18 Ves., 244; 1 Roper, 328; Robinson v. Brock, 1 H. & Munf., 213; Holmes v. Liptrot, 8 Ga., 279; Hamrico v. Laird, 10 Yerg., 222; Nevis v. Scott, 9 How., 196; Stilley v. Folger, 14 Ohio, 659.)

If by the contract an absolute estate vested in Mrs. Mitchell, and those who take the 'property after her death must claim by descent, and not as purchasers under the contract, a doubt has been suggested whether the rules of international comity would require distribution of personal property to be made by the courts of this State, as stipulated in the contract, according to the statutes of the State of South Carolina, or whether our own law for distribution of intestates' estates should not be followed. This suggestion might be regarded, in view of the fact that the intention of the parties is the leading consideration in arriving at the proper construction of such agreements as persuasive of the conclusion that the heirs, according to the statutes of South Carolina, should take as purchasers under the contract, and not by descent. But, independently of this view of it, we see no reason why the *lex loci contractus* may not by positive agreement be made the rule

for determining the parties who shall take as heirs or distributees on the failure of the wife to dispose of the property by will or otherwise, as well as to govern the construction of the contract in all other respects, and especially in respect to its control in the partition and disposal of property acquired after a change of the domicil from that of the marriage. (DeCouch v. Sarstin, 3 Johns. Ch., 190; LeButon v. Miles, 8 Paige, 261.)  But, if this is not the fact, we do not see how it can affect this case.  The husband having, as we have said, excluded himself by the contract from claiming the property, *jure mariti,* he can no more claim it by the law of distribution of Texas than he could under that of South Carolina; and, as the appellant under our law is certainly entitled to claim as an heir or distributee of the estate of her deceased sister, we see no reason why the averments of her petition, that she is the sole heir by the statutes of South Carolina, should bar her recovery, or furnish a ground for sustaining the demurrer.

The judgment is reversed, and the cause

REMANDED.