## Q. DAVIDSON, ADMINISTRATOR, v. A. B. PETICOLAS, ADMINISTRATOR.

1. Whether a bill of exchange was a " contract between merchant and merchant," within the meaning of the sixth section of the act of March 20, 1848, (Paschal's Digest, note 295,) since repealed, was to be determined by the character of the drawer and the payee of the instrument. If they were not merchants, the holder of the bill could not, by virtue of the fourth section of that act, fix the liability of the drawer and the indorser by protest and notice.

2. If the drawer as well as the payee of the bill was not a merchant, the bill was not mercantile paper, within the meaning of the statute of March 20, 1848, above referred to ; and the fact that all the other parties to the bill, payee, acceptor and indorsers, were merchants, could not impart to it such mercantile character.

3. Every indorsement of a bill of exchange implies a new contract between the indorser and the subsequent holders ; and though all indorsers may be sued together with the drawer, yet each is liable on his own contract, express or implied.

4. This court takes judicial cognizance that terms of the district courts were held at the times prescribed for them by the statutes of the State.

5. The provisions of the act of March 20, 1848, (Paschal's Digest, articles 229, 230, 231,) requiring suits to fix the liability of drawers and indorsers to be brought to the first or the second term of the court, cannot be regarded as a statute of limitation within the meaning of the forty-third section of the twelfth article of the State Constitution of 1869, which declares the statutes of limitation to have been suspended by the so-called act of secession of January 28, 1861.

6. An enactment of another one of the United States cannot be exemplified as evidence by a certificate of the Secretary of State of this State, unless it be set forth in the certificate that the enactment was found in a book " purporting to be printed under the authority " of the State in question. The Secretary's certificate that the enactment was " a true copy from the revised statutes of Louisiana " will not suffice. (Paschal's Digest, article 3712.)

7. It was error to render a judgment for coin on a bill of exchange due in 1861, and payable in " dollars." The case of Flournoy v. Healy, 31 Texas, 590, cited and approved on this point.

APPEAL from Victoria.  Tried below before the Hon. T. C. Barden.

Peticolas, as administrator of the estate of R. W. Montgomery, deceased, brought this action in December, 1869, against Truman Phelps and Quincy Davidson, administrators of J. O. Wheeler, deceased.  The cause of action was a bill of exchange, dated Victoria, Texas, June 1, 1860, for $1500, payable January 15, 1861, and drawn by T. Phelps in favor of said Wheeler, by whom it was indorsed to Nelson Clements, who indorsed it in blank.  It was drawn on Watts & Noble, New Orleans, and was duly accepted by them.

All the parties to the bill, except Phelps, the drawer, were merchants.  The acceptors failing to pay the bill at maturity, it was protested.  The opinion of the court indicates the facts in substance.

*Glass & Callender*, for the appellant.

*A. B. Peticolas*, for the appellee.—Is the statute requiring suit to be brought to the first term of the court a statute of limitation within the meaning of the forty-third section of our Constitution ?

In Locke v. Huling, 24 Texas R., 312, this statute is distinctly recognized by the Supreme Court as a statute of limitations.

But in passing judicially upon the ordinance of 1866, suspending the statutes of limitation (sec. 6, ord. 11,) our Supreme Court decided that " it was intended to embrace only those general laws of the State which deny rights of action, and may be interposed as an effectual bar to any recovery on the cause of action."  (Ryan v. Flint, 30 Tex. 385).

Under this decision the case at bar comes, by a fair construction of the language.

Defendants interpose in this case a general law, (the law requiring suit to be brought to the first term of the court), which limits and denies the right of recovery upon drafts of a certain class, and plead it in bar to any recovery in this suit.

But the above decision was upon a law that differs very essentially from section forty-third of our State Constitution.

Ordinance eleven, section six, is, " In all civil actions the time between the second day of March, 1861, and the second day of September, 1866, shall not be computed in the application of any statute of limitations."

Section forty-three, Constitution : " The statutes of limitation of civil suits were suspended by the so-called act of secession of the twenty-eighth of January, 1861, and shall be considered as suspended within this State, until the acceptance of this Constitution by the United States Congress."

The first recognizes the statutes of limitation as being (without this enactment), all of them, in full force and virtue ; does not propose to repeal them, but only regulate their applications to civil suits. The Constitution simply declares that they were repealed on twenty-eighth January, 1861, and shall stand repealed until the happening of a contingency.

There is no such thing, speaking with strict legal technicality, as the suspension of a law. To suspend a law is to make it without any legal force and effect, which is all that a repeal of the law does.

Is section six, act of 1848, (requiring suit to first term of the court), a law of limitation within the spirit and meaning of the Constitution ?

One of the objects of our Constitutional Convention in enacting section forty-three is believed to have been to secure to all persons out of the State having rights of action, the privilege of bringing suits, unembarrassed by the many questions of the constitutionality of our courts as organized under military and provisional governments in existence prior to the adoption of our new Constitution by Congress. Aside from any statutory provision, was R. W. Montgomery, a citizen of Louisiana, bound at his peril to take notice of the organization of our provisional governments here,

and to seek his remedy against his debtor in those courts, taking all the risks of their being declared void *ab initio?*

It is not necessary for us to discuss the question whether citizens of Texas, as between themselves, were bound to recognize and seek their remedies in the provisional courts. That question does not arise in this case, and has, perhaps, been decided in the affirmative in Smith v. Herbert, 30 Texas R., 681.

But non-residents could wait for the establishment of a judiciary under a constitution sanctioned and approved by Congress, before they entered into litigation involving important rights. If not, and if since 1865 there has been no legal doubt about the constitutionality, jurisdiction and authority of the courts, as to all persons, whether in the State or out of it, then in enacting section forty-three the Convention did a work of supererogation, since without this grave doubt there could be no reason why litigants should not have sought their remedies by suit long since.

It is believed that the Convention meant specially to protect non-residents in enacting section forty-three; because they ought not, at their peril, to be expected to take historical notice of all the orders, general and special, of the military governors and commanders of neighboring territory (not yet reconstructed, and not yet admitted into the family of States), by which courts were called into existence.

Texas was a State when this contract sued on was made; she was not a State from twenty-eighth of January, 1861, to —— day of March, 1870. As soon as she becomes a State, this non-resident debtor is found promptly seeking his rights with suit to the first term of the State courts after maturity of the draft sued on, but is met with the objection that this law requiring suit to be brought to the first term of the court is not a law of limitation; that people in Texas have been bringing suits for four years, and consequently this plaintiff upon this point cannot prevail.

But in 24 Tex., 312, our Supreme Court recognizes the statute,

requiring suits to be brought to the first term of the court, as a statute of limitation, pleadable in bar of the action, and in Hanger v. Abbott, 6 Wallace, 532, the United States Supreme Court recognizes the rights of citizens of the loyal States, as against citizens of the rebellious States, to have statutes of limitation annulled as to them, even when there was no State statute suspending them.

Non-residents are not bound to know that a moment of time intervened between January 28, 1861, and March, 1870. As to them the effect of section forty-three is to strike that period of time out of existence, and the first State court is the first court they are bound to notice, if my reasoning be correct.

The court will find upon examination that the nominal plaintiff is only the administrator in the State of Texas, for the purpose of enforcing the collection of this claim.

Third—This is a contract between merchant and merchant, within the meaning of the law of 1848. (Paschal's Digest, 151, Note 295.)

The only party to this draft not a merchant is Phelps, the drawer. We obtained our judgment against him by showing that he had no funds in the hands of the acceptor at the maturity of the draft, and that, as to him, it was an accommodation acceptance and of this fact it is but reasonable to suppose that Wheeler had notice, he being the only party to the draft that dealt with Phelps. If Wheeler knew that Phelps had no funds in the hands of Watts & Noble, to meet the draft at maturity, then the acceptance was an accommodation acceptance as to Wheeler as well as Phelps, so far as all subsequent holders of the draft were concerned; for the law presumes that Wheeler's indorsement was prior in time to the maturity of the draft (14 Tex., 277,) and the contract Wheeler made by his indorsement, with his indorser and every subsequent holder of the draft, was that the acceptor or maker would pay the draft at maturity, and if they did not, he would. (2 Parsons' Notes and Bills, 23.) In addition to this consideration, however,

XXXIV—2

we fix the liability of Wheeler and Clements by regular protest and notice, and the appellant seeks to avoid the force and effect of the protest and notice by contending that this contract is not between merchant and merchant, and that consequently Wheeler's liability can only be fixed by suit to the first term of the court after the maturity of the draft, which they contend was in 1865.

This defense is entirely technical and does not deserve any favorable consideration by the court, since its effect is, upon technical grounds alone, to avoid the payment of a just debt, for which the law presumes there was a valuable consideration; and if it appears by a just and fair construction of the section of the law under consideration and by the authorities, that the law is with us, we should prevail.

The object of suit to the first term of the court and of protest and notice is the same. (Sydnor v. Gascoigne, 11 Tex., 455.)

As to the indorser it is to notify him that the holder of the protested paper looks to him for payment, and to give him an early opportunity to indemnify himself by applying to the party from whom he received the note or draft, and to all other parties liable over to him. (Frost v. Holmes, 2 Tex., 32.)

In this case Wheeler, the indorser sued, had that notice. Could he excuse himself from his liability to the holder of the draft because the notice was given by protest and not by suit? Clearly not, either upon the reason of the rule, or under the words of the statute, the drawer is the only party to the draft whose business character gives character to the draft; because every other party to the draft was a merchant.

But the statute expressly says between merchant and merchant. It looks to the character of both parties to the contract. This draft, then, before it passed out of the hands of Wheeler, judged by the character of the parties to it, was half mercantile.

As between Phelps and Wheeler, in a suit by Wheeler, the rule of the statute would apply; but Wheeler had notice in time to

have brought a suit and secured himself, if he had chosen to do so. When Wheeler indorsed the draft to Clements, however, he made a new contract, not only with Clements but with every subsequent holder of the draft. He being a merchant drew a new bill in favor of a merchant, upon a mercantile firm, and upon his (Wheeler's) own credit as a merchant put the bill in circulation.

"An indorsement being a new and independent contract, every indorser of a bill makes a new contract and will be considered by law as the drawer of a new bill, if this be necessary to enforce the obligation he assumes." (2 Parsons, Notes and Bills, 25, and Note O; Edwards on Bills, 287, 288, which is full and clear on the subject; 12 Wend. R., 443; Ogden v. Saunders, 12 Wheaton, R., 341; 2 East's English R., 236; Eccles v. Ballard, 2 McCord S. Carolina R., 388; Young v. Bryan, 12 Wheaton, 151, 152.)


WALKER, J.—The exceptions to the rulings of the district court are as follows:

First—The court erred in overruling the exceptions of defendants and demurrer to the plaintiff's petition.

Second—The court erred in admitting as evidence the bill of exchange set out in the bill of exceptions.

Third—The court erred in admitting as evidence the certificate of the Secretary of State, set out in the bill of exceptions.

Fourth—The court erred in giving judgment upon the pleadings and evidence against the defendant Davidson, administrator of Z. O. Wheeler's estate.

Fifth—The court erred in every ruling made, and judgment rendered against the defendant, Quincy Davidson, administrator, etc.

In settling the question as to what parties shall fix the character of a negotiable instrument, whether it be a contract between merchant and merchant, their factors and agents, we are assisted.

by the case of Black v. Calloway, 30 Texas, 238. The court there say :

"No drawee ever becomes a party to such a contract until he accepts. Until then the contract exists between the drawer and the payee exclusively, and it may well admit of serious doubt if the two latter are not the parties to the bill, required by the statute to be merchant and merchant, in order to give a mercantile character to the paper. We do not intend to be understood as deciding this point, its decision not being necessary to a disposal of the case."

Our learned predecessors have left it for us to say, and we have no hesitation in so doing, that it is the drawer and payee of a bill of exchange who are to give it its distinctive character, and if they be not "merchant and merchant," the paper is not of that character which would enable the holder to fix the liability of the drawer and indorser by protest and notice, in accordance with the terms of the fourth section of the act of March 29, 1848. The sixth section of the act is as follows, (Article 99, Oldham & White's Digest):

"Three days of grace shall be allowed on all bills of exchange and promissory notes, assignable and negotiable by law; provided, that the fourth, fifth and sixth sections of this act shall extend only to contracts between merchant and merchant, their factors and agents."

This was the law in force at the time of the maturity of the bill herein sued on, but has been since repealed by the first section of the act of eleventh of January, 1862. We think the obvious construction of the sixth section of the act of 1848, refers the word " contracts " in the latter clause to the words " bills of exchange " in the fourth section, and in the first clause of the sixth section ; that such bills and notes are the only contracts referred to, and that it was not intended to embrace indorsements upon bills or notes, which were themselves not contracts between merchant and mer-

chant; and the fact that the drawee, the payee and the indorsers of the bill may have been merchants, does not change the original character of the paper.

Every indorsement of a bill of exchange implies a new contract between the indorser and the subsequent holders; and, although all indorsers may be sued together with the drawers, yet each is liable on his own express or implied contract.

This court will take judicial notice that there was a term of the district court begun and holden in the county of Victoria, on the third Monday in February, 1861, and another on the third Monday in August, 1861, to either of which terms this suit might have been brought, for the act suspending all laws for the collection of debts and liabilities on bonds, promissory notes, bills of exchange, etc., did not pass until the seventh day of December, 1861. (See Griffith v. Gary, 31 Texas R., 163.) Here the court say, unless the liability of an indorser has been fixed by bringing suit against the maker, as required by the first section of the act of March 20, 1848, he cannot be made liable. (See also Paschal's Digest, art. 229, note 290.) This effectually disposes of this case. But two other questions of importance arise in this case: It is claimed by counsel for the appellee that the statute referred to, requiring the suit to be brought to the first term, etc., was a statute of limitation, and has been suspended by the forty-third section of the twelfth article of the Constitution. We do not think, however, that this can be properly urged. The statute, like the law merchant, required a certain thing to be done to fix the liability, without which the holder of a bill could not recover either against the indorser or drawer. It imposed no limitation upon the time within which an established right might be enforced. It prescribed that which was necessary to do before the right itself was established, and, therefore, this case is not affected by the act of January 13, 1862, by the ordinance of 1866, nor by the Constitution of 1869. (See Pace v. Hollaman, 31 Texas, 158.)

The certificate of the Secretary of the State of Texas to the law of Louisiana, authorizing notaries to act by deputy, was insufficient.   He should have stated in his certificate that what he certified to was found in a book, "purporting to be printed under the authority of that State."

The last error we shall notice is in the judgment of the court, wherein the judgment is given for coin.   The bill sued on did not call for payment in coin.   It would have been better that the court should have followed the case of Flournoy, *et al.*, v. Healy, 31 Texas, 590, and thereby have saved us the trouble of commenting on this error.   The parties having waived a jury in the district court, it is the judgment of this court that this cause be reversed and dismissed.

Reversed and dismissed.