RICHARD POLSON *vs.* HENRY STEWART, JR.

Suffolk.   January 20, 21, 1896. — January 5, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Specific Performance of Covenant — Husband and Wife — Conflict of Laws — Construction — Consideration.*

A covenant made by a husband to his wife in North Carolina where they are domiciled, to surrender all his rights in land owned by her in Massachusetts, may be enforced specifically here, if she has a right to contract with him by the law of North Carolina.  FIELD, C. J. dissenting.

A covenant by a husband, A., to his wife, B., " to surrender, convey, and transfer to said B. and her heirs all the rights of him the said A. in and to the lands and property above described which he may have acquired by reason of the aforesaid marriage, and the said B. is to have the full and absolute control and possession of all of said property free and discharged of all the rights, claims, or demands of every nature whatsoever of the said A.," embraces claims arising upon his wife's death.

The fact that forbearance to bring a well founded suit for divorce is one of the considerations for a covenant does not invalidate the covenant.

BILL IN EQUITY, filed June 6, 1895, to enforce specific performance of a covenant executed by the defendant to his wife, Kitty T. P. Stewart, who died on December 26, 1893, intestate, and of whose estate the plaintiff, who was her brother, was appointed administrator, he having also acquired the rights of the other heirs in her estate.

The bill alleged, in substance, that the plaintiff's intestate, at the time of her death, and for more than two years previously, owned certain lands in this Commonwealth; that she was married to the defendant on or about January 25, 1892; that during the months of December, 1892, and January, 1893, they had their domicil in the State of North Carolina, and differences arose between them, by reason of which they separated; that the conduct of the defendant was such that, by the laws of that State, his wife was entitled to maintain against him a suit for divorce, and to be decreed a suitable allowance for alimony; that she intended and was about to bring such suit, " when, in order to induce her to forbear from that intention, and for other good and adequate considerations,"

the defendant made with her the agreements hereinafter mentioned; that, relying upon such agreements, she abandoned the divorce proceedings which she had contemplated; that on or about January 4, 1893, she, with the consent of her husband, "entered herself as a free trader, and acquired the right of contracting and dealing as if she were *sole*," by a written instrument, marked A, "duly executed, proved, and registered pursuant to the laws of North Carolina," which instrument purported to have been executed on January 4, and registered on January 7, 1893; that "immediately after" she "became a free trader, and had acquired the right to contract as if she were *sole*," she released and covenanted to release her rights of dower in all the lands which the defendant then owned or might thereafter acquire, by an instrument in writing, marked B, and which recited that it was entered into on January 4, 1893; that, "in consideration of such release of dower, and of other good and adequate considerations," the defendant executed with his wife an instrument marked C, which was dated January 4, 1893, and which, after reciting that the parties were then living separate and apart, and that Mrs. Stewart owned certain lands in North Carolina and Massachusetts, provided as follows:

"And whereas both parties to this contract are desirous that the said Kitty T. Polson Stewart, Jr., shall have full, absolute, and complete possession, management, and control of all the above described property; now, therefore, in consideration of the above premises, and in consideration of one dollar this day paid the said Henry Stewart, Jr., doth by these presents covenant and agree to surrender, convey, and transfer to said Kitty T. Polson Stewart, Jr., and her heirs, all the rights of him, the said Henry Stewart, in and to the lands and property above described, which he may have acquired by reason of the aforesaid marriage; and the said Kitty T. Polson Stewart, Jr., is to have the free and absolute control and possession of all of said property, free and discharged of all the rights, claims, or demands of every nature whatsoever of the said Henry Stewart, Jr."

The bill further alleged that all the agreements were made, and the instruments were executed and delivered, in North Carolina, where the parties had their domicil at the time, and were valid and effectual instruments, according to their intent

under the laws of that State; that when the agreements and instruments were made and delivered the defendant owned valuable real estate in North Carolina and in other States, in which his wife had an inchoate right of dower; that the agreement by the wife to release her dower was a full and adequate consideration for the agreement of the defendant to release and, surrender his marital rights, and the agreement was fully performed by her; that, " by reason of his agreement and promises in the instrument marked C," the defendant became bound to release to the heirs of his wife, upon her death, and to the plaintiff as the purchaser from them, all his right and estate in her property; and that, although requested, the defendant had refused to execute such release, or to perform his agreement in any respect, but contends that he is entitled to the same rights in the real estate of his wife as if the agreement had not been made, and threatens to enforce his claim thereto by legal proceedings.

The prayer of the bill was that the defendant might be enjoined from asserting against the plaintiff any title to the real estate in question ; and that he might be ordered to convey to the plaintiff all his right, title, and interest therein.   Extracts from the statutes of North Carolina relating to husband and wife were annexed to the bill, § 1828 of which provides that the wife shall be a free trader from the time of registration; and § 1835 provides that one of the requisites to the validity of a contract between a husband and wife shall be an examination of her separate and apart from him.

The defendant demurred to the bill, assigning several grounds therefor.   Hearing before *Knowlton*, J., who, at the request of the parties, reserved the case upon the bill and demurrer for the consideration of the full court.

*G. B. Upham*, for the defendant.

*J. Fox*, for the plaintiff.

HOLMES, J.   This is a bill to enforce a covenant made by the defendant to his wife, the plaintiff's intestate, in North Carolina, to surrender all his marital rights in certain land of hers.   The land is in Massachusetts.   The parties to the covenant were domiciled in North Carolina.   According to the bill, the wife took steps which under the North Carolina statutes

gave her the right to contract as a feme sole with her husband as well as with others, and afterwards released her dower in the defendant's lands. In consideration of this release, and to induce his wife to forbear suing for divorce, for which she had just cause, and for other adequate considerations, the defendant executed the covenant. The defendant demurs.

The argument in support of the demurrer goes a little further than is open on the allegations of the bill. It suggests that the instrument which made the wife a "free trader," in the language of the statute, did not go into effect until after the execution of the release of dower and of the defendant's covenant. But the allegation is that the last mentioned two deeds were executed after the wife became a free trader, as they probably were in fact, notwithstanding their bearing date earlier than the registration of the free trader instrument. We must assume that at the date of their dealings together the defendant and his wife had as large a freedom to contract together as the laws of their domicil could give them.

But it is said that the laws of the parties' domicil could not authorize a contract between them as to lands in Massachusetts. Obviously this is not true. It is true that the laws of other States cannot render valid conveyances of property within our borders which our laws say are void, for the plain reason that we have exclusive power over the *res.* *Ross* v. *Ross*, 129 Mass. 243, 246. *Hallgarten* v. *Oldham*, 135 Mass. 1, 7, 8. But the same reason inverted establishes that the *lex rei sitæ* cannot control personal covenants, not purporting to be conveyances, between persons outside the jurisdiction, although concerning a thing within it. Whatever the covenant, the laws of North Carolina could subject the defendant's property to seizure on execution, and his person to imprisonment, for a failure to perform it. Therefore, on principle, the law of North Carolina determines the validity of the contract. Such precedents as there are, are on the same side. The most important intimations to the contrary which we have seen are a brief note in Story, Confl. of Laws, § 436, note, and the doubts expressed in Mr. Dicey's very able and valuable book. Lord Cottenham stated and enforced the rule in the clearest way in *Ex parte Pollard*, 4 Deac. 27, 40 *et seq.; S. C.* Mont. & Ch. 239, 250. So Lord

Romilly in *Cood* v. *Cood*, 33 Beav. 314, 322. So in Scotland, in a case like the present, where the contract enforced was the wife's. *Findlater* v. *Seafield*, Faculty Decisions, 553, Feb. 8, 1814. See also *Cuninghame* v. *Semple*, 11 Morison, 4462; Erskine, Inst. Bk. 3, tit. 2, § 40; Westlake, Priv. Int. Law, (3d ed.) § 172; Rorer, Interstate Law, (2d ed.) 289, 290.

If valid by the law of North Carolina there is no reason why the contract should not be enforced here. The general principle is familiar. Without considering the argument addressed to us that such a contract would have been good in equity if made here, (*Holmes* v. *Winchester*, 133 Mass. 140, *Jones* v. *Clifton*, 101 U. S. 225, and *Bean* v. *Patterson*, 122 U. S. 496, 499,) we see no ground of policy for an exception. The statutory limits which have been found to the power of a wife to release dower (*Mason* v. *Mason*, 140 Mass. 63, and *Peaslee* v. *Peaslee*, 147 Mass. 171, 181) do not prevent a husband from making a valid covenant that he will not claim marital rights with any person competent to receive a covenant from him. *Charles* v. *Charles*, 8 Grat. 486. *Logan* v. *Birkett*, 1 Myl. & K. 220. *Marshall* v. *Beall*, 6 How. 70. The competency of the wife to receive the covenant is established by the law of her domicil and of the place of the contract. The laws of Massachusetts do not make it impossible for him specifically to perform his undertaking. He can give a release which will be good by Massachusetts law. If it be said that the rights of the administrator are only derivative from the wife, we agree, and we do not for a moment regard any one as privy to the contract except as representing the wife. But if then it be asked whether she could have enforced the contract during her life, an answer in the affirmative is made easy by considering exactly what the defendant undertook to do. So far as occurs to us, he undertook three things: first, not to disturb his wife's enjoyment while she kept her property; secondly, to execute whatever instrument was necessary in order to release his rights if she conveyed; and thirdly, to claim no rights on her death, but to do whatever was necessary to clear the title from such rights then. All these things were as capable of performance in Massachusetts as they would have been in North Carolina. Indeed, all the purposes of the covenant could have been

secured at once in the lifetime of the wife by a joint conveyance of the property to a trustee upon trusts properly limited. It will be seen that the case does not raise the question as to what the common law and the presumed law of North Carolina would be as to a North Carolina contract calling for acts in Massachusetts, or concerning property in Massachusetts, which could not be done consistently with Massachusetts law.

With regard to the construction of the defendant's covenant we have no doubt. It is " to surrender, convey, and transfer to said Kitty T. Polson Stewart, Jr., and her heirs, all the rights of him, the said Henry Stewart, Jr., in and to the lands and property above described, which he may have acquired by reason of the aforesaid marriage, and the said Kitty T. Polson Stewart, Jr., is to have the full and absolute control and possession of all of said property free and discharged of all the rights, claims, or demands of every nature whatsoever of the said Henry Stewart, Jr." Notwithstanding the decision of the majority in *Rochon* v. *Lecatt*, 2 Stew. (Ala.) 429, we think that it would be quibbling with the manifest intent to put an end to all claims of the defendant if we were to distinguish between vested rights which had and those which had not yet become estates in the land, or between claims during the life of the wife and claims after her death. It is plain, too, that the words import a covenant for such further assurance as may be necessary to carry out the manifest object of the deed. See *Marshall* v. *Beall*, 6 How. 70; *Ward* v. *Thompson*, 6 Gill & Johns. 349; *Hutchins* v. *Dixon*, 11 Md. 29; *Hamrico* v. *Laird*, 10 Yerger, 222; *Mason* v. *Deese*, 30 Ga. 308; *McLeod* v. *Board*, 30 Tex. 238.

Objections are urged against the consideration. The instrument is alleged to have been a covenant. It is set forth, and mentions one dollar as the consideration. But the bill alleges others, to which we have referred. It is argued that one of them, forbearance to bring a well founded suit for divorce, was illegal. The judgment of the majority in *Merrill* v. *Peaslee*, 146 Mass. 460, 463, expressly guarded itself against sanctioning such a notion, and decisions of the greatest weight referred to in that case show that such a consideration is both sufficient and legal. *Newsome* v. *Newsome*, L. R. 2 P. & D. 306, 312. *Wil-*

*son* v. *Wilson*, 1 H. L. Cas. 538, 574. *Besant* v. *Wood*, 12 Ch. D. 605, 622. *Hart* v. *Hart*, 18 Ch. D. 670, 685. *Adams* v. *Adams*, 91 N. Y. 381. *Sterling* v. *Sterling*, 12 Ga. 201. Then it is said that the wife's agreement in bar of her dower was invalid, because it had not the certificate that she had been examined, etc., as required by the North Carolina statutes annexed to the bill. Whether it was invalid or not, the defendant was content with it, and accepted the execution of it as a consideration. This being so, it would be hard to say that it was not one, even if without legal effect. Whether void or not, it is alleged to have been performed ; and finally, if it was void, it was void on its face, as matter of law, and the husband must be taken to have known it, so that the most that could be done would be to disregard it ; if that were done, the other consid-erations would be sufficient. See *Jones* v. *Waite*, 5 Bing. N. C. 341, 351.                              *Demurrer overruled.*

FIELD, C. J. I cannot assent to the opinion of a majority of the court. By our law husband and wife are under a general disability or incapacity to make contracts with each other. The decision in *Whitney* v. *Closson*, 138 Mass. 49, shows, I think, that the contract sued on would not be enforced if the husband and wife had been domiciled in Massachusetts when it was made. As a conveyance made directly between husband and wife of an interest in Massachusetts land would be void although the parties were domiciled in North Carolina when it was made, and by the laws of North Carolina were authorized to make such a conveyance, so I think that a contract for such a conveyance between the same persons also would be void. It seems to me illogical to say that we will not permit a con-veyance of Massachusetts land directly between husband and wife, wherever they may have their domicil, and yet say that they may make a contract to convey such land from one to the other which our courts will specifically enforce. It is possible to abandon the rule of *lex rei sitæ*, but to keep it for conveyances of land and to abandon it for contracts to convey land seems to me unwarrantable.

The question of the validity of a mortgage of land in this Commonwealth is to be decided by the law here, although the

mortgage was executed elsewhere where the parties resided, and would have been void if upon land there situated.  *Goddard* v. *Sawyer*, 9 Allen, 78.  "It is a settled principle, that ' the title to, and the disposition of, real estate must be exclusively regulated by the law of the place in which it is situated.' "  *Cutter* v. *Davenport*, 1 Pick. 81.  *Osborn* v. *Adams*, 18 Pick. 245.  The testamentary execution of a power of appointment given by will in relation to land is governed by the *lex situs*, or the law of the domicil of the donor of the power.  *Sewall* v. *Wilmer*, 132 Mass. 131.

The plaintiff, merely as administrator, cannot maintain the bill.  *Caverly* v. *Simpson*, 132 Mass. 462, 464.  The plaintiff must proceed on the ground that Mrs. Henry Stewart, Jr. acquired by the instruments executed in North Carolina the right to have conveyed or released to her and her heirs by her husband all the interest he had as her husband in her lands in Massachusetts; that this right descended on her death to her heirs, according to the law of Massachusetts; and that the plaintiff, being an heir, has acquired the interest of the other heirs, and therefore brings the bill as owner of this right.  The plaintiff, as heir, claims by descent from Mrs. Stewart, and if the contract sued on is void as to her, it is void as to him.

It is only on the ground that the contract conveyed an equitable title that the plaintiff as heir has any standing in court.  His counsel founds his argument on the distinction between a conveyance of the legal title to land and a contract to convey it.  If the instrument relied on purported to convey the legal title, his counsel in effect admits that it would be void by our law.  He accepts the doctrine stated in *Ross* v. *Ross*, 129 Mass. 243, 246, as follows : " And the validity of any transfer of real estate by act of the owner, whether *inter vivos* or by will, is to be determined, even as regards the capacity of the grantor or testator, by the law of the State in which the land is situated."  As a contract purporting to convey a right in equity to obtain the legal title to land, he contends that it is valid.  I do not dispute the cases cited with reference to contracts concerning personal property, but the rule at common law in regard to the capacity of parties to make contracts concerning real property, as I read the cases and text-books, is that the *lex situs* governs.

*Cochran* v. *Benton*, 126 Ind. 58. *Doyle* v. *McGuire*, 38 Iowa, 410. *Sell* v. *Miller*, 11 Ohio St. 331. *Johnston* v. *Gawtry*, 11 Mo. App. 322. *Frierson* v. *Williams*, 57 Miss. 451.

Dicey on the Conflict of Laws is the latest text-book on the subject. He states the rule as follows.

Page lxxxix. " (B). Validity of Contract. (i) Capacity.

" Rule 146. Subject to the exceptions hereinafter mentioned, a person's capacity to enter into a contract is governed by the law of his domicil (*lex domicilii*) at the time of the making of the contract.

" (1) If he has such capacity by that law, the contract is, in so far as its validity depends upon his capacity, valid.

" (2) If he has not such capacity by that law, the contract is invalid.

" Exception 1. A person's capacity to bind himself by an ordinary mercantile contract is (probably) governed by the law of the country where the contract is made (*lex loci contractus*) [?].

" Exception 2. A person's capacity to contract in respect of an immovable (land) is governed by the *lex situs*."

Page xcii. " (A). Contracts with regard to Immovables.

" Rule 151. The effect of a contract with regard to an immovable is governed by the proper law of the contract [?].

" The proper law of such contract is, in general, the law of the country where the immovable is situate (*lex situs*)."

On page 517 *et seq.* he states the law in the same way, with numerous illustrations, but with some hesitation as to the law governing the form of contracts to convey immovables. See page xc., Rule 147, Exception 1. For American notes with cases, see page 527 *et seq.* In the Appendix, page 769, note (B), he discusses the subject at length, and with the same result. Some of the cases cited are the following: *Succession of Larendon*, 39 La. An. 952 ; *Besse* v. *Pellochoux*, 73 Ill. 285 ; *Fuss* v. *Fuss*, 24 Wis. 256 ; *Moore* v. *Church*, 70 Iowa, 208 ; *Heine* v. *Mechanics & Traders Ins. Co.* 45 La. An. 770 ; *First National Bank of Attleboro* v. *Hughes*, 10 Mo. App. 7 ; *Ordronaux* v. *Rey*, 2 Sandf. Ch. 33 ; *Adams* v. *Clutterbuck*, 10 Q. B. D. 403 ; *Chapman* v. *Robertson*, 6 Paige, 627, 630.

Phillimore in 4 Int. Law, (3d ed.) 596, states the law as follows :

" DCCXXXV. 1. The case of a contract respecting the *transfer* of immovable property illustrates the variety of the rules which the foreign writers upon private international law consider applicable to a contract to which a foreigner is a party: they say that,

" i. The capacity of the obligor to enter into the còntract is determined by reference to the law of his domicil.

" ii. The like capacity of the obligee by the law of *his* domicil.

" iii. The mode of alienation or acquisition of the immovable property is to be governed by the law of the situation of that property.

" iv. The external form of the contract is to be governed by the law of the place in which the contract is made.

" It is even suggested by Fœlix, that sometimes the *interpretation* of the contract may require the application of a fifth law.

" DCCXXXVI. The Law of England, and the Law of the North American United States, require the application of the *lex rei sitæ* to all the four predicaments mentioned in the last section.

" DCCXXXVII. But a distinction is to be taken between contracts to transfer property and the contracts by which it is transferred. The former are valid if executed according to the *lex loci contractus ;* the latter require for their validity a compliance with the forms prescribed by the *lex rei sitæ.* Without this compliance the *dominium* in the property will not pass."

To the same effect as to the capacity of the parties are Rattigan, Priv. Int. Law, 128 ; Whart. Confl. of Laws, (2d ed.) § 296 ; Story, Confl. of Laws, (8th ed.) §§ 424–431, 435 ; Rorer, Interstate Law, 263 ; Nelson, Priv. Int. Law, 147, 260. See Westlake, Priv. Int. Law, (3d ed.) §§ 156, 167 *et seq.*

On reason and authority I think it cannot be held that, although a deed between a husband and his wife, domiciled in North Carolina, of the rights of each in the lands of the other in Massachusetts, is void as a conveyance by reason of the incapacity of the parties under the law of Massachusetts to make and receive such a conveyance to and from each other, yet, if there are covenants in the deed to make a good title, the covenants can be specifically enforced by our courts, and a convey-

ance compelled, which, if voluntarily made between the parties, would be void.

I doubt if all of the instruments relied on have been executed in accordance with the statutes of North Carolina. By § 1828 of the statutes of that State set out in the papers, the wife became a free trader from the time of registration. This I understand is January 7, 1893. Exhibit B purports to have been executed before that time, to wit, January 4, 1893. There does not appear to have been any examination of the wife separate and apart from her husband, as required by § 1835. If Exhibit B fails, there is at least a partial failure of consideration for Exhibit C. It is said that an additional consideration is alleged, viz. the wife's forbearing to bring a suit for divorce. Whether this last is a sufficient consideration for a contract I do not consider. It is plain enough that there was an attempt on the part of the husband and wife to continue to live separate and apart from each other without divorce, and to release to each other all the property rights each had in the property of the other. If the release of one fails, I think that this court should not specifically enforce the release of the other ; mutuality in this respect is of the essence of the transaction. If the husband owned lands in Massachusetts, and had died before his wife, I do not think that Exhibit B, even if it were executed according to the statutes of North Carolina, and the wife duly examined and a certificate thereof duly made, would bar her of her dower. Our statutes provide how dower may be barred. Pub. Sts. c. 124, §§ 6–9. Exhibit B is not within the statute. See *Mason* v. *Mason*, 140 Mass. 63. Ante-nuptial contracts have been enforced here in equity so as to operate as a bar of dower, even if they did not constitute a legal bar. *Jenkins* v. *Holt*, 109 Mass. 261. But post-nuptial contracts, so far as I am aware, never have been enforced here so as to bar dower, unless they conform to the statutes. *Whitney* v. *Closson*, 138 Mass. 49. Whatever may be true of contracts between husband and wife made in or when they are domiciled in other jurisdictions, so far as personal property or personal liability is concerned, I think that contracts affecting the title to real property situate within the Commonwealth should be such as are authorized by our laws. I am of opinion that the bill should be dismissed.